## No. 14,700.

### PEOPLE EX REL. STOKES *v*. NEWTON ET AL.
(101 P. [2d] 21)

Decided March 25, 1940.

Mr. VICTOR A. MILLER, for plaintiff in error.

Mr. FRANK L. HAYS, Mr. MONTGOMERY DORSEY, for defendants in error.

Mr. PHILIP HORNBEIN, amicus curiae.

*En Banc.*

MR. JUSTICE OTTO BOCK delivered the opinion of the court.

THE parties appear here as in the trial court, and reference will be made to them as relator and Denver Housing Authority. The whole question involved in this controversy is whether the enactments conferring the powers and privileges enumerated in chapters 131 and 132, 1935 Session Laws, violate article XX of the state Constitution, in that they are local and municipal in character and not of public concern within the police power of the state.

Relator in quo warranto alleges usurpation of franchises, privileges and grants by the Denver Housing Authority, in that the latter seeks, with public money, to acquire by grant and condemnation, real estate in the City and County of Denver of great value, thereon to build apartment houses and other dwellings, all to be exempt from taxation as property of a municipal corporation; to borrow money thereon and to incur large expense, all to the damage and prejudice of the people, and he prays that said Denver Housing Authority be commanded to answer by what right it claims to use and enjoy said privileges and franchises. The Denver Housing Authority answered, inter alia, that it is a body politic and corporate, created under and by virtue

of chapter 132, supra, which authorizes the establishment of municipal corporations known as housing authorities. Relator demurred to the answer, which raises the sole question referred to above. The court overruled the demurrer, and, relator electing to stand upon his demurrer, judgment of dismissal was duly entered, to reverse which the cause is brought here by writ of error.

The legislation before us is related to the United States Housing Act. 42 U.S. C.A., sections 1401-1430. Section 1401 is as follows: "It is hereby declared to be the policy of the United States to promote the general welfare of the Nation by employing its funds and credit, as provided in this chapter, to assist the several States and their political subdivisions to alleviate present and recurring unemployment and to remedy the unsafe and insanitary housing conditions and the acute shortage of decent, safe, and sanitary dwellings for families of low income, in rural or urban communities, that are injurious to the health, safety, and morals of the citizens of the Nation."

Section 1402, subsection 11, provides: "The term 'public housing agency' means any state, county, municipality, or other governmental entity or public body * * * which is authorized to engage in the development or administration of low-rent housing or slum clearance."

To take advantage of the funds and credit provided by the United States Housing Act, our legislature enacted chapters 131 and 132, supra. Chapter 131, among other things, permits cities of the first class to engage in slum clearance and housing projects; to award contracts to construct such projects; prescribe the mode of procedure for, and regulation of, the issuance of bonds or other securities, and the payment thereof; empowers such cities to acquire land for a Housing Authority; to exercise the right of eminent domain, and grants certain tax exemptions. Chapter 132 provides for the creation of housing authorities, and the appointment of commissioners who constitute the housing authority, and

are vested with corporate powers for the purpose of carrying on housing projects within cities of the first class and surrounding territory, and it also sets out the necessary steps to be taken to create such corporations.

Section 3, subdivision (1), of the chapter provides: " 'Authority' or 'Housing Authority' shall mean a corporate body organized in accordance with the provisions of this Act for the purposes, with the powers, and subject to the restrictions hereinafter set forth."

Section 4 provides in part: "The boundaries of such authority shall include the city and the area within ten miles from the territorial boundaries of the city, but in no event shall it include the whole or a part of any other city nor any area included within the boundaries of another authority. In case an area lies within ten miles of the boundaries of more than one city, such area shall be deemed to be within the boundaries of the authority embracing such area which was first established, all priorities to be determined on the basis of the time of the filing of the aforesaid certificates in the office of the Secretary of State."

Section 9 of the chapter provides, inter alia: "An authority shall constitute a body both corporate and politic, exercising public powers, and having all the powers necessary or convenient to carry out and effectuate the purposes and provisions of this Act."

■ That acts of this character are of public concern and a proper exercise of the police power under state sovereignty has been recognized by every court of last resort where this question has been raised. *Rutherford v. City of Great Falls,* 107 Mont. 512, 86 P. (2d) 656, 658, and case there cited.

Relator contends that under article XX of the state Constitution, which he asserts is unlike any constitutional authorization of home rule in any other state, the legislation here involved can only be authorized by an amendment to the city charter under the police power delegated by said article, and that the enactment of

chapters 131 and 132, supra, are an invasion of the constitutional powers of a home-rule city. That the powers of home rule granted under article XX are of importance to the communities affected thereby cannot be questioned. The first paragraph of section 6 of the article provides: "The people of each city or town of this state, having a population of two thousand inhabitants as determined by the last preceding census taken under the authority of the United States, the state of Colorado or said city or town, are hereby vested with, and they shall always have, power to make, amend, add to or replace the charter of said city or town, which shall be its organic law and extend to all its local and municipal matters."

We have held that under this provision the city may assume exclusive control of all matters of a local and municipal concern, and where it has done so, state laws are not applicable as to such matters. *Denver v. Bossie,* 83 Colo. 329, 333, 266 Pac. 214. A home-rule city is vested with the power to make, amend and add to or replace the charter of such a city. That the City and County of Denver has not amended its charter to authorize such powers as have been granted by the state legislature to the Denver Housing Authority under chapters 131 and 132, supra, is clear and cannot successfully be questioned. In *Denver v. Tihen,* 77 Colo. 212, 235 Pac. 777, we held that the people in adopting article XX never intended to surrender or relinquish any portion of the state's police power to declare the public policy of the state. If it was so intended it would have been an abortive effort. See, also, *People v. Denver,* 90 Colo. 598, 603, 10 P. (2d) 1106.

It will be noted that the constitutional basis for the National Housing Act is predicated upon the general welfare clause. Paragraph 1, section 8, article I, of the Constitution of the United States gives Congress the power "to lay and collect taxes, duties, imposts, and excises; to pay the debts and provide for the common

defense and general welfare of the United States. *Steward Machine Co. v. Davis,* 301 U.S. 548, 586, 57 Sup. Ct. 883, 81 L. Ed. 1279. If the constitutional basis for the enactment of the National Housing Act was the general welfare of the nation, it would seem reasonable to assume that the enactment here in question is a valid exercise of the state's legislative power in promoting the general welfare of the state. Moreover, what may be a "local" concern is, in a measure, controlled by time and circumstances. As to the circumstances, the legislature made findings, and while we are not bound by them, if reasonable they will be respected and given due weight. The question we are asked to determine is whether this legislation is of such "local" concern as to make it an unconstitutional invasion of home-rule power. In view of our conclusions, it is unnecessary to determine that question, and therefore nothing would be gained by distinguishing our former decisions, to which we adhere.

▮ Relator's theory is that the state has lost all jurisdiction over a home-rule city in matters of local and municipal concern. The theory is untenable. Paragraph (h), section 6, of article XX provides, inter alia: "The statutes of the state of Colorado, so far as applicable, shall continue to apply to such cities and towns, except in so far as superseded by the charters of such cities and towns or by ordinance passed pursuant to such charters." As already stated, Denver has not amended its charter so as to take advantage of the provisions of the National Housing Act. There is no contention that the present charter forbids such action. Assuming, but not deciding, that the authority granted to Denver by chapter 131, supra, is a matter of local concern, and there being no question that, except for article XX, supra, action thereunder is a proper exercise of the police power of the state, Denver not having exercised the authority to legislate by amending its charter, the state law controls.

Chapter 132, with which we are directly concerned in this controversy, authorizes the creation of municipal corporations to be known as housing authorities. The Denver Housing Authority was created under this chapter. See section 3 (1), section 4, section 9, supra.

We have already quoted from section 4, chapter 132, which fixes the boundaries of this municipal corporation, and which includes an area within ten miles of Denver. Under this chapter the Denver Housing Authority is not an agency of the City and County of Denver. It is a separately created quasi-municipal corporation, in which there are designated certain steps to be taken by officers of the city, including the appointment of commissioners of the Denver Housing Authority, of which not more than one may be a city official. There is no contention here that the steps necessary to create the Denver Housing Authority were not properly taken. In so far as it authorizes officials of a home-rule city to exercise any power under chapter 132, supra, they are deemed to be state agencies. This chapter does not require them to function as municipal agents, and they are not here complaining as such. They evidence a willingness to cooperate with the state and national governments in performing the functions set out in chapter 132, supra. *State ex rel. v. City Council of Helena,* 108 Mont. 347, 90 P. (2d) 514, 517. The state, in its sovereign capacity, has on several occasions enacted such legislation. Comparable is the creation of the Moffat Tunnel District. Chapter 138, '35 C.S.A., §§200-220. Some of the points of similarity between the Moffat Tunnel District and the Denver Housing Authority are: (a) Both districts include the City and County of Denver as a home-rule city; (b) both are by the express terms of the acts creating them bodies corporate and politic; (c) both were created for the purpose of constructing improvements; (d) there is no express provision for either in the charter of the City and County

of Denver; (e) both were created by acts of the legislature.

In *Milheim v. Moffat Tunnel Improvement District*, 72 Colo. 268, 211 Pac. 649, a similar issue was presented. In discussing the proposition we said (p. 280): "It is said, also, that the act violates article XX of the Constitution, in that it authorizes a special assessment of property in Denver without the approval of the tax-paying electors. This ignores the fact that the district is an independent entity, not subject to the charter of the City of Denver, though the city forms a part of the district. The same contention was made in *Wilson v. Board of Trustees, supra,* and the authority of the Legislature to form a district, involving parts of counties and cities, and give it the right of local assessment, was upheld."

The Denver Housing Authority is an independent entity, not subject to the charter of Denver, though the city forms a part of the district. In the Milheim case we said that even though the district authorizes a special assessment of property in Denver without the approval of the taxpaying electors, this did not constitute a violation of article XX of the Constitution. We have held that the legislature has the right to create quasi-municipal corporations and to provide for their personnel and manner of administration in any way it sees fit. *People ex rel. v. Lee,* 72 Colo. 598, 213 Pac. 583. In so far as the exercise of any power granted to the Denver Housing Authority under chapter 132 is concerned, article XX of the state Constitution has no application.

We have given careful consideration to other questions raised in the briefs, but deem it unnecessary to pass upon them.

The judgment is affirmed.