540 So.2d 567 (1989)
HOUSING AUTHORITY OF THE CITY OF LAKE CHARLES, Louisiana, Plaintiff-Appellee,
v.
Floyd PAPPION, Defendant-Appellant.
No. 87-1336.
Court of Appeal of Louisiana, Third Circuit.
March 15, 1989.
McHale, Bufkin & Dees, Michael Dees, Lake Charles, for plaintiff/appellee.
Lonnie Smith, Lake Charles, for defendant/appellant.
Before STOKER, DOUCET and KNOLL, JJ.
DOUCET, Judge.
This appeal arises out of a suit by plaintiff, the Housing Authority of the City of Lake Charles, to evict defendant, Floyd Pappion, Jr., from an apartment he occupied in a complex managed by plaintiff. Following trial on the matter, the Lake Charles City Court concluded that there existed good cause for eviction and ordered defendant to vacate the premises. From this adverse judgment defendant now appeals.
Defendant began receiving Supplemental Security Income benefits based on disability shortly after an administrative law judge's decision dated December 3, 1985. In that decision, the administrative law judge found that defendant had been and still was disabled, as defined in the Social Security Act, since September 30, 1982, due to "severe chronic paranoid schizophrenia."
Shortly thereafter, defendant applied for and gained tenancy in Chateau du Lac Apartments. Chateau du Lac is a housing complex for the elderly and disabled which is privately owned, but is managed by plaintiff under the federal government's Section 8 Housing Program. The monthly rent of tenants in Section 8 housing is partially subsidized by the Department of Housing and Urban Development. Thus, Chateau du Lac Apartments is a recipient of federal funding.
Defendant was eligible for residency in the apartment complex because he established that he was a disabled individual under 42 U.S.C.A. § 1437a(b)(3), by reason of his paranoid schizophrenia.
Defendant occupied an apartment at Chateau du Lac for an undetermined period of time until he voluntarily moved out some time around July of 1986. Approximately *568 one year later, defendant again became a tenant at Chateau du Lac by virtue of a lease agreement dated July 22, 1987.
Thereafter, on or about August 12, 1987, defendant received notice of lease termination due to a series of events which occurred between August 6, 1987 and August 10, 1987. Appellant's representative, a paralegal employed by Southwest Louisiana Legal Services, requested an informal hearing pursuant to the procedure set out in the notice of lease termination. The notice advised that this hearing was "to be conducted by an official of the Housing Authority to refute the allegations contained in this notice." The notice further advised that if defendant was unsuccessful in refuting the allegations in the notice, he would have a right to contest the matter in a court of law.
An informal hearing was held at Chateau du Lac on August 24, 1987. Present at the hearing were defendant and his representative, the manager of Chateau du Lac, and Ben Taylor, Assistant Director of the Housing Authority. At the hearing, defendant's representative waived defendant's right to testify and stated there was no contest to the allegations contained in the notice of lease termination. No transcript was made of the hearing.
After the hearing, by a letter dated September 3, 1987, the Housing Authority, through Ben Taylor, advised defendant that Chateau du Lac was within its rights to proceed with the eviction under the terms of the lease agreement, which stated:
"The Landlord may terminate this Agreement only for:
* the Tenant's material noncompliance with the terms of this agreement;
* * * * * *
Material noncompliance includes, but is not limited to, ..., serious or repeated interference with the rights and quiet enjoyment of other tenants; ...."
Plaintiff then sued for eviction of defendant in Lake Charles City Court. Following trial on the matter, the court stated that plaintiff had complied with federal rules and regulations applicable to Section 8 housing and that plaintiff had proven good cause for termination of the lease and eviction. Judgment was rendered terminating the lease and ordering defendant to vacate the premises within 24 hours. From this judgment, defendant perfected this suspensive appeal.
On appeal, defendant asserts that he was evicted solely by reason of his handicap and, therefore, in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. A. § 794.
Section 504 provides in pertinent part:
"No otherwise qualified individual with handicaps in the United States, as defined in section 706(8) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...."
In Doe v. New York University, 666 F.2d 761 (2nd Cir.1981), the court set forth the elements of a Section 504 claim:
"In order to make out a case based on a violation of § 504 a plaintiff must prove (1) that she is a "handicapped person" under the Act, (2) that she is "otherwise qualified" for the position sought, (3) that she is being excluded from the position solely by reason of her handicap, and (4) that the position exists as part of a program or activity receiving Federal financial assistance."[1]
The record reveals that Chateau du Lac Apartments, through the Section 8 Housing Program of the federal government, is receiving federal financial assistance. Thus, the fourth element of a Section 504 claim is present.
Section 7(8)(B) of the Act, 29 U.S.C. § 706(8)(B), provides in pertinent part that an "individual with handicaps" is "any person *569 who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." In the instant case, due to evidence in the record of defendant's mental impairments requiring hospitalization and ongoing treatment through medication, we believe defendant should be classified as an "individual with handicaps." Thus, the first element of a Section 504 claim is met.
We believe this case turns on the second element of a Section 504 claim which requires that the claimant (in this case the defendant) be "otherwise qualified" for the position sought. Relying on the Supreme Court's decision in Southeastern Community College v. Davis, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), the court in Doe v. New York University, supra, discussed this part of Section 504 as follows:
"Turning to the Act's term otherwise qualified handicapped individual, it is now clear that this refers to a person who is qualified in spite of her handicap and that an institution is not required to disregard the disabilities of a handicapped applicant, provided the handicap is relevant to reasonable qualifications for acceptance, or to make substantial modifications in its reasonable standards or program to accommodate handicapped individuals but may take an applicant's handicap into consideration, along with other relevant factors, in determining whether she is qualified for admission... [I]f the handicap could reasonably be viewed as posing a substantial risk that the applicant would be unable to meet its reasonable standards, the institution is not obligated by the Act to alter, dilute or bend them to admit the handicapped applicant."
In the instant case, the record provides ample evidence that defendant is not qualified for tenancy in the Chateau du Lac Apartments "in spite of" his handicap. Ruth Zerr, the manager of the complex, testified that defendant "calls me a Bitch, and has insulted me at different times." She further stated that she had received numerous complaints that defendant had terrorized elderly residents of the complex and that he threatened to kill one resident. She further stated that she had received complaints about "loud noises" and "disturbing the peace."
Lionel Fobbs, a resident of Chateau du Lac, testified that defendant threatened to kill him, that defendant called him, elderly people, and security guards names, and that he had heard and seen defendant threaten other people.
Tim Ewalt, another resident who lived next door to defendant, testified that he had heard defendant "yelling and screaming in his room at the top of his voice, that he was going to get somebody, and he was cursing and swearing" and that "I could hear him in my room and I called the security and told them that somebody was disturbing the peace up on our floor...." He further testified that for a few days defendant was "acting real crazy and ahh, he would make gestures, like he [sic] going to spit in your face."
Another resident of the building, Marjorie Green, testified that defendant had threatened her on the elevator and that since that incident, she had never gotten on the elevator when he was on it. She further stated that defendant made remarks about everyone in the lobby, that he howled like a wolf, and that she heard him tell one resident that she looked like a chicken.
Jiles Bayard, a resident and security guard at Chateau du Lac, testified that he went to defendant's apartment after receiving complaints about a disturbance and heard defendant inside the apartment yelling and "talking about cutting people, using razor blades to cut people, wanting people to bleed ..." He testified that he warned defendant to quit yelling. He further stated that he was called to defendant's apartment because of complaints "two or three times, on two or three nights there." He also stated that defendant began "playing music" to drown out what was being said by defendant. He then *570 testified that defendant had threatened him personally.
Defendant testified that he didn't remember much about these incidents, but that he remembered talking to an "officer" three times, and that he remembered "talking to people through doors." He also stated that he had been receiving "mental health treatments" for a number of years. He further stated that when all of these incidents occurred, he had not been keeping his appointments for treatment and had not been taking his medication.
Emily Green testified that she was a registered nurse at the Lake Charles Mental Health Center and that she was defendant's "worker" there. She stated that she had been working with defendant for about four years. She testified that defendant needs medication for his mental condition, but that he hadn't taken his medication at the time all of the above mentioned incidents occurred. Further, she stated that defendant now received an injection every twenty-eight days to control his condition, that defendant was "doing much better on this medication," and that defendant was "essentially more or less symptom free" while he was taking his medication. She then stated that defendant, at the time of trial, had not been attending his monthly group meetings regularly.
As stated earlier, the terms of the lease agreement between plaintiff and defendant clearly state that the agreement may be terminated for "serious or repeated interference with the rights and quiet enjoyment of other tenants." We find this to be a reasonable standard required of tenants by plaintiff for admission and continued residency at Chateau du Lac. Further, we find that defendant's handicap, and its manifestation through defendant's bizarre behavior, is relevant to this reasonable qualification for residency, so that plaintiff is not required to disregard the disabilities of defendant. Additionally, plaintiff is not required to make substantial modifications in this standard or in its program to accommodate the defendant, as is asserted by defendant.
Although defendant stated that all the incidents of interference with other tenants occurred only when he failed to take his medication, and that he has no problems with other tenants while on his medication, there is no guarantee that defendant will take his medication regularly in the future.
As stated by the trial court, defendant at any time could decide he doesn't need treatment or medication and again exhibit bizarre behavior. If that were to occur, the parties would be in the same position as they are in this case and making the same arguments.
Thus, we find that defendant's handicap could reasonably be viewed as posing a substantial risk that defendant will be unable to meet the reasonable standards of conduct required of tenants of Chateau du Lac by plaintiff, such that plaintiff is not obligated to alter, dilute, or bend those standards in order to allow defendant continued tenancy at Chateau du Lac, and that plaintiff was within its rights in terminating defendant's lease. The trial court did not err in ordering that the lease be terminated and that defendant vacate the premises.
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs are to be assessed against defendant.
AFFIRMED.
NOTES
[1] Section 504 was amended effective October 2, 1986 to substitute "individual with handicaps" for "handicapped individual" and to substitute "section 706(8) of this title" for "section 706(7) of this title", however this amendment did not change the substance of Section 504.