## James ROE

v.

## SUGAR RIVER MILLS ASSOCIATES, MB Management Corporation.

### Civ. No. 91–393–M.

United States District Court,
D. New Hampshire.

May 12, 1993.

Jonathan P. Baird, Claremont, NH, Abigail Turner, Concord, NH, for plaintiff.

Carl D. Hanson, Claremont, NH, for defendants.

## ORDER

McAULIFFE, District Judge.

Plaintiff resides at Sugar River Mills apartment complex in Claremont, New Hampshire. Sugar River Mills is the largest federally subsidized housing complex in Western New Hampshire. It is comprised of approximately 130 tenants occupying 111 units. Defendant, Sugar River Mills Associates, owns and operates the apartment complex. Defendant, MB Management Corporation of Boston, Massachusetts, is the managing agent.

Plaintiff asserts that defendants' conduct toward him violates provisions of the Fair Housing Amendments Act, 42 U.S.C. §§ 3601–3619 (1990) (the "Act"). Plaintiff says that he suffers from mental illness and is, therefore, "handicapped" as defined by the Act. He claims that defendants are wrongfully discriminating against him insofar as they have: (1) threatened to evict him for conduct related to his handicap; and (2) have failed to make "reasonable accommodations" necessary to afford him an equal opportunity to use and enjoy an apartment at Sugar River Mills. *See* 42 U.S.C. § 3604(f)(2) and (3).

Defendants deny that plaintiff is "handicapped" and argue that, regardless of whether he is or is not handicapped, because plaintiff represents a "direct threat to the health or safety of other individuals" living at Sugar River Mills he is not entitled to the protections afforded by the Act under an applicable exception. *See* 42 U.S.C. § 3604(f)(9) (1992 supp.). Therefore, defendants assert that they need not undertake any efforts to "accommodate" plaintiff's alleged mental handicap or its allegedly dangerous manifestations.

### I. *Facts.*

On July 4, 1991, Mr. Burt Becker, an 82 year-old resident of Sugar River Mills, reported to defendants that plaintiff threatened him with physical violence. Plaintiff allegedly accosted Mr. Becker, using obscene, offensive and threatening language. Mr. Becker said that plaintiff's conduct, on this and other occasions, caused him to suffer great anxiety, made him fearful for his physical safety, and lead directly to his giving written notice of his intent to vacate and seek housing elsewhere. *See* Affidavit of Burt Becker. *See also* Affidavit of Verne Clow, technical manager of Sugar River Mills (attesting to the fact that Mr. Becker and other tenants reported the events of July 4, 1991 to him), and

Affidavit of Ina Rozocat, site manager at Sugar River Mills (attesting to the fact that two other tenants confirmed that plaintiff threatened Mr. Becker with physical violence on July 4, 1991). Other tenants of Sugar River Mills witnessed the events in question and corroborated Mr. Becker's version. One tenant, Ms. Telesco, stated that, as a result of plaintiff's alleged conduct, she too was placed in great fear of the plaintiff and immediately after the confrontation became sick to her stomach. *See* Affidavit of Doris Telesco.

Plaintiff's behavior on July 4, 1991, led to his conviction in the Claremont [N.H.] District Court of disorderly conduct, in violation of N.H.Rev.Stat.Ann. ch. 644:2, in that he:

> knowingly, in a public place, direct[ed] threats to another person, to wit, Burt Becker, [using] obscene and offensive words ... likely to provoke a violent reaction on the part of an ordinary person, to wit ... scream[ed] at the said Burt Becker, "dirty Bastard, low down son of a bitch", "dirty low down prick."

Certified Copy of Plaintiff's Conviction from Claremont District Court, September 17, 1991. In reliance upon this conviction and other alleged instances of similar conduct by the plaintiff, defendants have moved for summary judgment.

Defendants argue that there is no genuine dispute as to any material fact related to the issue of whether plaintiff poses a "direct threat to the health or safety of other individuals." *See* 42 U.S.C. § 3604(f)(9) (1992 Supp.). Defendants claim that plaintiff's conviction, along with the sworn testimony of residents at Sugar River Mills attesting to his confrontational, harassing, and threatening behavior, establish beyond question that he constitutes such a threat.

In response, plaintiff denies that his conduct toward the other residents on July 4, 1991, was threatening or harassing. Furthermore, and perhaps more importantly, plaintiff claims that his "outbursts" (whose existence he does not deny) are the product of his mental handicap. Accordingly, he claims that defendants have a statutory duty to explore whether reasonable accommodations might be undertaken in order to eliminate or sufficiently minimize the impact of his handicap (and its physical manifestations) upon the other tenants at Sugar River Mills to allow him to remain as a tenant.

## II. *Standard of Review.*

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling upon a party's motion for summary judgment, the Court must, "view the entire record in the light most hospitable to the party opposing summary judgment, including all reasonable inferences in that party's favor." *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990).

The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986), *motion denied*, 480 U.S. 903, 107 S.Ct. 1343, 94 L.Ed.2d 515 (1987). If the moving party carries its burden, the party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial, demonstrating "some factual disagreement sufficient to deflect *brevis* disposition." *Mesnick v. General Electric Co.*, 950 F.2d 816, 822 (1st Cir. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). *See also* Fed. R.Civ.P. 56(e). This burden is discharged only if the cited disagreement relates to a genuine issue of material fact. *Wynne v. Tufts University School of Medicine*, 976 F.2d 791, 794 (1st Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1845 (1993). "In this context, 'genuine' means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party [and] 'material' means that the fact is one that might affect the outcome of the suit under the governing law." *United States v. One Parcel of Real Property*, 960 F.2d 200, 204 (1st Cir.1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

## III. *The Fair Housing Amendments Act.*

In 1988, Congress amended the Fair Housing Act to proscribe housing discrimination

based upon "family status" or "handicap." Pub.L. No. 100–430, § 6, 102 Stat. 1619 (1988). The Act now provides that it shall be unlawful:

(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—(A) that buyer or renter; . . .

(3) For the purposes of this section, discrimination includes . . . (B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling; . . . .

42 U.S.C. § 3604(f) (1992 Supp.)

Plaintiff asserts that defendants have failed to make such "reasonable accommodations" for his benefit and, in so doing, have violated the Act. Defendants rely on an exemption contained within the Act, which provides that:

Nothing in this subchapter requires that a dwelling be made available to an individual whose tenancy would constitute a direct threat to the health or safety of other individuals or whose tenancy would result in substantial physical damages to the property of others.

42 U.S.C. § 3604(f)(9) (1992 Supp.). In urging the application of this exemption, defendants invoke the Act's legislative history, arguing that:

once the lessor has "objective evidence which is sufficiently recent to be credible" that a handicapped person constitutes a direct threat from [sic] others, the lessor is exempt from action based on discrimination under the Fair Housing Amendments Act when it decides to initiate, and does initiate eviction against the person who constitutes such a direct threat. . . .

Defendants' Motion for Summary Judgment at 5–6, *quoting* H.R.Rep. No. 711, 100th Cong., 2d Sess. *reprinted in* 1988 U.S.Code Cong. & Admin.News 2173, 2179 (the "House Report").[1]

■ It is somewhat unclear precisely how the language of section 3604(f)(9) of the Act applies here. Defendants argue that if plaintiff is, as they say, a threat to the safety of others, then the provisions of the Act simply do not apply. Therefore, they need not make any effort to "accommodate" plaintiff's handicap in an effort to minimize the threat he poses nor need they continue to offer housing to him, without regard to any causal relationship between his handicap and the threat he poses. Plaintiff interprets the Act's exemption somewhat differently. Plaintiff argues that only if he constitutes a threat to the safety of others *after* defendants have made reasonable efforts to accommodate his handicap may defendants refuse to offer him continued housing.

The Court is persuaded that plaintiff's position is both better reasoned and more consistent with the express provisions and goals of the Act. Plaintiff's position also finds support in applicable legislative history. In elaborating upon the manner in which the Act should be applied and interpreted, the House Judiciary Committee stated that courts should apply the standard articulated by the Supreme Court in *School Board of Nassau County v. Arline*, 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987), when determining whether efforts to accommodate are required under the Act. The House Report at 2189–90.

In *Arline* the Supreme Court held that an individual with tuberculosis may be "handicapped" within the meaning of Section 504 of the Rehabilitation Act and that an employer must, if possible, "reasonably accommodate" that individual to minimize the risk her disease presents to those around her, provided that she is "otherwise qualified" to retain her position. *School Board of Nassau County v. Arline*, 480 U.S. at 287–88, 107 S.Ct. at 1130–31 (1987).

Citing the decision in *Arline*, the House Judiciary Committee reported its intent as follows:

---

1. No Senate Report was submitted with this legislation. 1988 U.S.Code Cong. & Admin.News 2173.

Thus, ... [pursuant to the Act,] a dwelling need not be made available to an individual whose tenancy can be shown to constitute a direct threat and a significant risk of harm to the health or safety of others. *If a reasonable accommodation could eliminate the risk,* entities covered under this Act are required to engage in such accommodation....

The House Report at 2190 (emphasis added). This interpretation of the Act is entirely consistent with Congress' goal of eliminating housing discrimination based upon stereotypes, prejudice, or irrational fear of those who are "handicapped."

Accordingly, assuming plaintiff is handicapped, the Act requires defendants to demonstrate that no "reasonable accommodation" will eliminate or acceptably minimize the risk he poses to other residents at Sugar River Mills, before they may lawfully evict him. What, if anything, defendants have done to accommodate plaintiff's alleged handicap is in dispute, as is whether any "reasonable accommodation" would in fact permit plaintiff to live, peaceably and safely, among the other tenants at Sugar River Mills. And, of course, defendants also dispute plaintiff's claimed handicap. Given these genuine disputes as to material issues of fact, summary judgment is unavailable. Accordingly, defendants' motion for summary judgment is denied.

SO ORDERED.