**Leonard ROE, Plaintiff,**

v.

**HOUSING AUTHORITY OF the CITY OF BOULDER and the City of Boulder, Defendants.**

No. 94–B–2033.

United States District Court, D. Colorado.

Dec. 26, 1995.

David S. Sanderson, Michael Grills, Sanderson & Associates, P.C., Boulder, CO, for plaintiff.

Alan E. Boles, Jr., Office of the City Attorney, Boulder, CO, Arthur Karstaedt, Peter Gregory, Harris, Karstaedt, Jamison & Powers, P.C., Englewood, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Defendant Housing Authority of the City of Boulder (BHA) and the City of Boulder (City) move for summary judgment pursuant to Fed.R.Civ.P. 56 on the claims of plaintiff, Leonard Roe (Roe) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101–12213 (ADA), the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601, *et seq.* (FHAA), and the Rehabilitation Act of 1973, 29 U.S.C. §§ 794, 794a (Rehab Act). The City also seeks dismissal of the claims against it pursuant to Fed. R.Civ.P. 12(b). Also pending is Roe's motion to strike designation of non-parties and for interim attorney fees. After consideration of the motions, briefs, and argument I will grant the City's motion for summary judgment. I will deny BHA's motion for summary judgment. Also, I will grant plaintiff's motion to strike designation of non-parties and deny without prejudice the motion for interim attorney fees. .

### I.

Plaintiff, Leonard Roe (Roe) is a seventy-nine year old unemployed man who has lived at Northport Apartments (Northport), Boulder, Colorado, since November 1991. Mr. Roe has a gross monthly income of $522. $208 comes from old age pension and $314 comes from social security. Roe's only family are two grown sons living in Oregon whom he has not seen in several years.

Roe contends that he suffers from a severe mental illness known as bipolar disorder, also known as manic-depressive disorder. He has a long history of mental health problems dating from the 1940's. He has spent time in mental institutions where he received various treatments including electric shock and insulin shock. Roe is hearing impaired and does not have a hearing aid.

In November 1991, Roe rented an apartment at Northport, a 48–unit apartment building serving low-income elderly and/or disabled persons. Northport, along with other housing facilities in Boulder, is owned and operated by BHA. According to Roe, BHA and the City receive federal funds to, among other things, provide housing for the low-income elderly and/or disabled. Roe also contends that the City is a municipality with control, authority and/or supervision over the activities of BHA.

On June 1, 1994, BHA served Roe with a "30 Day Notice of Intent to Terminate Tenancy" (Notice). BHA seeks to evict Roe based, in large part, on his abusive and

threatening behavior in late April and May, 1994. The most serious incident occurred May 3, 1994 when Roe struck and injured another resident which required medical treatment including sutures. Apparently Mr. Roe's aggressive behavior also led to the Meals on Wheels program discontinuing service to his building in May, 1994. At about the same time, Alice Minugh, the building resident manager, also complained about several instances when Roe was verbally abusive and threatening toward her. The Notice also cited multiple instances from early 1993 to May 1994 when residents complained of noise from Roe's apartment.

Roe contends that each allegation of the Notice implicates a symptom of either his mental disability or his hearing impairment. Symptoms of Roe's mental disability include loud, obscene outbursts, paranoia, and confusion. His hearing impairment results at times in his raising his voice and causes him to increase the volume of his radio. Roe alleges that the symptoms and related behavior associated with each of his conditions are controllable and readily accommodated.

On September 1, 1994 Roe filed this lawsuit claiming that defendants violated his right to be free from discrimination on the basis of his handicaps and disabilities as guaranteed by the ADA, the FHAA, and the Rehab Act. His 42 U.S.C. § 1983 claim based on the Equal Protection Clause of the Fourteenth Amendment was withdrawn at the motions hearing. Roe's state law claims for wanton breach of contract and infliction of emotional distress were dismissed pursuant to his request on November 9, 1995. Roe seeks injunctive relief, compensatory and punitive damages, and attorneys' fees and costs.

On September 7 and 14, 1994 an eviction hearing was held in Boulder pursuant to the Notice. On September 22, 1994 the hearing officer, Christopher R. Brauchli, issued a decision that the BHA acted properly in initiating the eviction. Eviction proceedings in state court followed. However, on September 14, 1994, after a hearing, I issued a temporary restraining order stopping further eviction proceedings pending a ruling on Roe's motion for a preliminary injunction.

On November 7, 1994, pursuant to stipulation, I entered an order restraining the BHA from terminating Roe's lease or evicting him from his apartment without further order of the court.

## II.

Fed.R.Civ.P. 56 provides that summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53; *Mares v. ConAgra Poultry Co., Inc.,* 971 F.2d 492, 494 (10th Cir.1992).

Once the moving party demonstrates an absence of evidence supporting an essential element of the plaintiff's claim, the burden shifts to the plaintiff to show that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. To satisfy this burden the nonmovant must point to specific facts in an affidavit, deposition, answers to interrogatories, admissions, or other similar admissible evidence demonstrating the need for a trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Mares,* 971 F.2d at 494.

Summary judgment is also appropriate where no reasonable jury could return a verdict for the claimant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511; *Mares,* 971 F.2d at 494. However, summary judgment should not enter if, view-

ing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512; *Mares,* 971 F.2d at 494.

### III.

The City moves for dismissal pursuant to Fed.R.Civ.P. 12(b) for failure to state a claim upon which relief can be granted and for lack of jurisdiction over the subject matter of certain claims or in the alternative for summary judgment. I will grant the motion for summary judgment.

■ Roe argues that the City is liable on his claims because the BHA is a department and agency of the City. The City contends the BHA is not a department or agency of the City and, thus, the City should be dismissed from this action. I agree with the City.

It is undisputed that Roe is a tenant at the Northport Apartments which is owned and operated by the BHA. (Complaint ¶ 1, 8). Roe alleges that the City is a "municipality with control, authority, and/or supervision over the activities of the BHA" (Complaint ¶ 10) and that the City "provides funding and/or administrative support for the activities of the BHA." (Complaint ¶ 11).

The BHA was created pursuant to the Colorado Housing Authorities Law, section 29–4–201, *et seq.,* C.R.S. Under this state law, each housing authority created is "a body both corporate and politic, exercising public powers and having all the powers necessary or convenient to carry out and effectuate the purposes and provisions of the [statute]." § 29–4–209(1), C.R.S.; *Allen v. City of Boulder Housing Authority,* 852 P.2d 1335, 1337 (Colo.App.1993). Power to create a housing authority is delegated by the state to any city which determines the need for such an authority. § 29–4–204, C.R.S. Control of the housing authority is vested in a board of commissioners selected by the city council or by the mayor. § 29–4–205, C.R.S. The housing authority and its commissioners are under a statutory duty to comply with all laws of the State of Colorado. § 29–4–206,

C.R.S. Broad statutory powers are delegated by the General Assembly to a Colorado housing authority:

. . . . .

d. to prepare, carry out, and operate projects and to provide for the construction, reconstruction, improvement, alteration, or repair of any project . . .;

e. to take over by purchase, lease, or otherwise any project undertaken by any government or by the city;

f. to manage as agent of the city any project constructed or owned by the city;

g. to act as agent for the federal government in connection with the acquisition, construction, operation, or management of a project . . .;

q. to sue and be sued;

t. to make and execute contracts and other instruments necessary or convenient to the exercise of the powers of the authority;

§ 29–4–209, C.R.S.

No Colorado case has addressed the precise issue whether a housing authority created pursuant to § 29–4–201, C.R.S. is a distinct, independent governmental entity from the city within which it operates. However, in *People ex rel. Stokes v. Newton,* 106 Colo. 61, 101 P.2d 21 (1940), the Colorado Supreme Court held that the Denver Housing Authority was not an agency of the City and County of Denver. Rather, "it is a separately created quasi-municipal corporation, in which there are designated certain steps to be taken by officers of the city, including the appointment of commissioners of the Denver Housing Authority." *Id.* at 67, 101 P.2d 21.

Likewise, here, the BHA was created pursuant to a state statute in which there are specific steps taken by city officials to appoint the commissioners of the housing authority. The housing authority was then vested with broad powers including, but not limited to, the power to hire employees, contract, buy, sell, manage, and own real and personal property, build projects, manage projects, borrow money, issue bonds, sue, and be sued. §§ 29–4–205 and 209, C.R.S.

Roe contends that the City is liable for the actions of the BHA because the city council

and mayor appoint the housing authority commissioners. However, the limited nature of the authority to appoint commissioners for fixed terms and to remove them only for cause underscores the independent nature of the relationship between a housing authority and the city which created it. Although § 29–4–209(f), C.R.S. empowers a housing authority to manage a city owned project as agent of the city, there is no dispute that the Northport Apartments is independently owned and operated by BHA rather than the City. No other provision, statutory or otherwise, and no evidence exists that the *City* has any *right* to direct, manage, supervise or approve the operations of the BHA. Nor does Roe allege that the City directly or indirectly controlled the actions of BHA.

Roe points to no evidence that the City had any contact with him in matters pertaining to this suit. Moreover, the City offers evidence that it has not acted or failed to act in any manner toward Roe. Indeed, the City had no knowledge of the matters in this action before suit was filed. (Zemler Aff.; Brown Depo.). Roe argues that a letter from his counsel to the Boulder City Attorney (Pltf.Exh. A, Motion for TRO) is evidence that the City had knowledge of the actions which form the basis of this suit. However, the letter refers to the BHA and its actions rather than to any action by the City. Roe also contends that the City controls the BHA because it utilizes the Boulder City Attorney as its legal counsel. However, pursuant to the Colorado Housing Authorities Law, section 29–4–205(5), "a [housing] authority may call upon ... the chief law officer of the city for such legal services as it may require, or it may employ its own counsel and legal staff." BHA's power to choose legal counsel further undermines Roe's allegation the BHA is an agent of the City.

I conclude as a matter of law on the undisputed facts that the BHA is an independent governmental entity over which the City exercised neither direct nor indirect control over the affairs of the BHA and its relationship with Roe. Roe's claims against the City cannot stand upon a naked allegation of vicarious liability. Accordingly, I will grant summary judgment on all of Roe's claims against the City.

## IV.

BHA moves for summary judgment on Roe's ADA, Rehab Act and FHAA claims. I will deny the motion.

*Characteristics of the Acts*

ADA

The ADA prohibits discrimination against a "qualified individual with a disability ... by reason of such disability [so as to] be excluded from participation in or ... deni[al] of the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

■ To qualify for the protection of the ADA, a plaintiff must establish that: "(1) he is a disabled person within the meaning of the ADA; (2) he is qualified, that is, with or without reasonable accommodation[ ], he is eligible for the services, programs or activities of a public entity; and (3) the public entity discriminated against him." *Milton v. Scrivner, Inc.*, 53 F.3d 1118, 1123 (10th Cir. 1995) *quoting White v. York Int'l Corp.*, 45 F.3d 357, 360–61 (10th Cir.1995).

Under the ADA, a "qualified individual" is an "individual with a disability who, with or without reasonable accommodation, is eligible to participate in or receive the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132; *see School Bd. of Nassau County, Fla. v. Arline*, 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987).

The ADA defines "disability" as:

A. a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

B. a record of such an impairment; or

C. being regarded as having such an impairment.

42 U.S.C. § 12102(2).

Rehabilitation Act

 Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 provides in pertinent part:

No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

Under the Rehab Act, a plaintiff must prove that s/he:

1. is a "handicapped individual" under the Rehab Act

2. is "otherwise qualified" for the benefit, program, or activity;

3. was excluded from the program solely by reason of his/her handicap; and

4. the program or activity receives federal financial assistance.

*See Strathie v. Department of Transp.,* 716 F.2d 227, 230 (3rd ·Cir.1983); *Doe v. New York University,* 666 F.2d 761, 774 (2nd Cir. 1981). The Rehab Act provides a private right of action where an individual alleges and proves discrimination based on a handicap. *NAACP v. Medical Center, Inc.,* 599 F.2d 1247, 1258 (3rd Cir.1979).

 As used in § 794 of the Rehab Act, the term "handicapped" means:

(i) ... a physical or mental impairment which substantially limits one or more ... major life activities, (ii) ... a record of such an impairment, or (iii) [being] regarded as having such an impairment.

29 U.S.C. § 706(7)(A).

"Major life activities" is defined as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Jasany v. United States Postal Service,* 755 F.2d 1244 (6th Cir.1985).

Fair Housing Amendments Act

The FHAA states that "[i]t is the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601. The original Fair Housing Act (FHA) prohibited discrimination solely on the basis of race, color, religion, or national origin. *United States v. California Mobile Home Park Management Co.,* 29 F.3d 1413, 1416 (9th Cir.1994). Congress expanded the FHA's protection to handicapped persons in the FHAA of 1988, Pub.L. 100–430, 102 Stat. 1619.

 To prevail on a FHAA claim, a plaintiff must prove that a defendant:

1. discriminated against any person in the terms, conditions, or privileges of sale or rental of a dwelling; or

2. in the provision of services or facilities in connection with such dwelling;

3. because of a handicap of that person. 42 U.S.C. § 3604(f)(2)(A); *Shapiro v. Cadman Towers, Inc.,* 51 F.3d 328 (2nd Cir. 1995). A plaintiff can prove a FHAA violation by showing intentional discrimination, discriminatory impact, or refusal to make reasonable accommodations. *Robinson v. City of Friendswood,* 890 F.Supp. 616, 622 (S.D.Tx.1995); *Oxford House–C v. City of St. Louis,* 843 F.Supp. 1556–57 (E.D.Mo.1994); *Oxford House, Inc. v. City of Virginia Beach, Va.,* 825 F.Supp. 1251, 1258 (E.D.Va.1993).

 In enacting the anti-discrimination provisions of the FHAA, Congress relied on definitions, standards, and cases developed under section 504 of the Rehab Act, 29 U.S.C. § 794. *See e.g. Shapiro v. Cadman Towers, Inc.,* 51 F.3d 328 (2nd Cir.1995); *Justice v. Pendleton Place Apts.,* 40 F.3d 139, 143 (6th Cir.1994) ("handicap ... [to] be interpreted consistent with ... Section 504 of the Rehabilitation Act") *quoting* H.R. 100–711, 1988 U.S.C.C.A.N. 2173, 2183. The legislative history of the FHAA also indicates that the drafters intended to draw on case law generated under the Rehab Act, a provision like the FHAA also specifically directed at eradicating discrimination against handicapped individuals. *See* House Report 711, 1988 U.S.C.C.A.N. at 2186 & n. 66, 2189–90 & n. 74 (*citing Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979) (Rehab Act); *see also United States v. California Mobile Home Park Management Co.,* 29 F.3d 1413, 1416–17 (9th Cir.1994). The FHAA classified as discriminatory, the "refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a handicapped]

person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B); *California Mobile Home Park*, 29 F.3d at 1416. Moreover, "the FHAA imposes an affirmative duty upon landlords reasonably to accommodate the needs of handicapped persons." *Id.* 42 U.S.C. § 3604(f)(3)(B). Also, the Supreme Court has stated that the FHAA must be given a "generous construction" to carry out a " 'policy that Congress consider[s] to be of the highest priority.' " *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 211–12, 93 S.Ct. 364, 367–68, 34 L.Ed.2d 415 (1972); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380, 102 S.Ct. 1114, 1125, 71 L.Ed.2d 214 (1982).

Viewed together, each of these federal statutes forbids discrimination against an individual because of a "disability" or "handicap,"—terms that are defined identically in their respective Acts. 29 U.S.C. § 706(7)(A); 42 U.S.C. § 12102(2). The Acts also require reasonable accommodation of an individual's disability or handicap, and do not require provision of services to an individual who poses a threat to others. Thus, based on the explicit intent of Congress and the similar goals of the ADA, the Rehab Act and the FHAA, I will analyze the FHAA, ADA, and Rehab Act claims together.

■ BHA concedes that it is a "public entity" within the meaning of the ADA and the Rehab Act. *See* 42 U.S.C. § 12131(1)(B). (SJ Mtn. p. 20). The question, then, is whether a genuine issue of fact exists that Roe is a "qualified individual" with a "disability" or a "handicap" and an "otherwise qualified person."

In support of its summary judgment motion, BHA outlines in great detail, evidence that it was not aware of Roe's mental disability because he did not tell them about it. Also, Boulder County Department of Social Services (BCDSS) and Boulder County Mental Health Center (BCMHC) did not advise BHA of Roe's longstanding mental problems. BHA argues there is no genuine dispute that it had neither a record of Roe's impairment nor regarded plaintiff as having bipolar disorder. So, argues BHA, it is entitled to summary judgment on plaintiff's claims be-

cause it could not accommodate a disability or handicap unknown to them.

■ Knowledge of a disability or handicap may be acquired directly, by observation, or from a third party. *See Schmidt v. Safeway, Inc.*, 864 F.Supp. 991, 997 (D.Ore.1994). Here, there is evidence that Barbara L. Blazon, BHA Occupancy Specialist, thought Roe had a mental disability based on his behavior and also her knowledge that he was on medication. She formed the opinion that Roe suffered from a mental disability "early on, . . . within the first year he moved in, probably." (Blazon Depo. p. 66–68). Also, Michelle Miezwa, BHA Resident Service Program Coordinator, testified that from November, 1992 on, she thought Roe was mentally disabled. (Miezwa Depo. p. 50–51). Under these circumstances, there is a genuine dispute whether BHA had knowledge of Roe's disability or handicap. Also, BHA's motive for instituting eviction proceedings is clearly in dispute.

BHA also seeks summary judgment on the basis that Roe is a direct threat to the health and safety of other residents and, thus, is not an "otherwise qualified individual." Based on this reasoning, BHA contends that under the FHAA, the ADA, and the Rehab Act, Roe is not entitled to accommodation of his alleged handicaps or disabilities and, thus, eviction is proper. Roe claims that BHA has a statutory duty to reasonably accommodate his disabilities in order to allow him to remain as a tenant.

Under § 3604 of the FHAA, it is unlawful to discriminate against a buyer or renter because of a handicap. Discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f) (1992 Supp.) However, the FHAA contains an exemption which provides that:

> Nothing in this subchapter requires that a dwelling be made available to an individual whose tenancy would constitute a direct threat to the health or safety of other individuals or whose tenancy would result

in substantial physical damages to the property of others.

42 U.S.C. § 3604(f)(9) (1992 Supp.) Thus, a person who constitutes a direct threat to others is not eligible for the benefits provided by the FHAA. Likewise, the ADA and Rehab Act forbid discrimination against an "otherwise qualified individual" solely because of a disability.

The issue of when the duty to accommodate arises is critical in this case; i.e. when the determination is made whether someone is "otherwise qualified"—before or after reasonable efforts are made to accommodate the plaintiff's handicap. This issue is one of first impression in the 10th Circuit. Research reveals only one case dealing with this precise issue. *Roe v. Sugar River Mills Assoc.*, 820 F.Supp. 636 (D.N.H.1993). The facts in *Sugar River Mills* are strikingly similar to ours.

In *Sugar River Mills,* an elderly male resident suffering from mental illness began exhibiting aggressive and abusive behavior towards other residents and the apartment manager. His behavior culminated in a criminal conviction for disorderly conduct and eviction proceedings by the federally subsidized apartment complex. Defendants argued that there was no need to "accommodate" plaintiff's handicap because if he were a threat to the safety of others, then the provisions of the FHAA did not apply. Plaintiff argued that "only if he constitutes a threat to the safety of others *after* defendants have made reasonable efforts to accommodate his handicap may defendants [evict him]." *Sugar River Mills,* 820 F.Supp. at 638–639 (emphasis added). The New Hampshire district court relied on legislative history of the FHAA and the standard articulated in *School Board of Nassau County v. Arline,* 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987) (Rehab Act) in reaching its decision that accommodation of an individual's handicap must be attempted before denial of the benefits of federal legislation. *Sugar River Mills,* 820 F.Supp. at 639–40.

In *Arline,* the Supreme Court held that under the Rehab Act, an employer must, if possible, "reasonably accommodate" an employee to minimize the risk that the employee's disease would be transmitted to those around her, provided that the person is "otherwise qualified" to retain employment. *School Board of Nassau County v. Arline,* 480 U.S. at 287–88, 107 S.Ct. at 1130–31 (1987). The next year, Congress amended the Fair Housing Act making it unlawful:

(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap [of that buyer or renter];

. . . . .

(3) For the purposes of this section, discrimination includes ...

(B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling;

. . . .

42 U.S.C. § 3604(f) (1992 Supp.)

The House Judiciary Committee cited the *Arline* decision in discussing its intent in amending the Fair Housing Act:

Thus, ... [pursuant to the Act,] a dwelling need not be made available to an individual whose tenancy can be shown to constitute a direct threat and a significant risk of harm to the health or safety of others. If a reasonable accommodation could eliminate the risk, entities covered under this Act are required to engage in such accommodation. . . .

*Sugar River Mills,* at 639–40, quoting H.R.Rep. No. 711, 100th Cong., 2d Sess. reprinted in 1988 U.S.Code Cong. & Admin.News 2173, 2190.

As stated in *Sugar River Mills,* at 640, requiring accommodation before denial of housing is "entirely consistent with Congress' goal of eliminating housing discrimination based upon stereotypes, prejudice, or irrational fear of those who are 'handicapped.' " I agree with the rationale in *Sugar River Mills* and hold that, assuming Roe is handicapped or disabled, before he may lawfully be evicted BHA must demonstrate that no "reasonable accommodation" will eliminate or

acceptably minimize any risk Roe poses to other residents at Northport.

BHA cites *Talley v. Lane*, 13 F.3d 1031 (7th Cir.1994) and *Housing Authority of the City of Lake Charles v. Pappion*, 540 So.2d 567 (La.App.1989) in support of its position that Roe cannot succeed on the merits of his claims. These cases are distinguishable. In *Talley*, plaintiff, who was legally blind, was denied admission to federally subsidized housing based on his extensive past criminal record. In his complaint, Talley failed to "allege discrimination based on his handicap" contending "only that his application to the [ ] disabled housing program was denied because of his past criminal conduct." *Talley*, at 1034. Talley's failure to link his disability to the reason why the housing authority denied him housing was fatal to his claim. In Roe's case, if he is found to be disabled or handicapped, then there is at least a genuine dispute that his alleged disabilities or handicaps, bipolar disorder and uncorrected hearing impairment, are linked directly to the behavior which forms the basis for BHA's eviction action.

*Housing Authority of the City of Lake Charles v. Pappion*, 540 So.2d 567 (La.App. 1989) presents a somewhat closer case. In this intermediate appellate state case, Pappion, a "severe chronic paranoid schizophreni[c]," lived in an apartment in a federally funded housing complex for the elderly and disabled. At some point, Pappion began verbally threatening other residents, at times would howl like a wolf, and yelled at people. Also, there were repeated complaints of noise and disturbances inside his apartment. *Id.* at 569. The housing authority sought to evict Pappion for "serious or repeated interference with the rights and quiet enjoyment of other tenants." *Id.*

In upholding Pappion's eviction, the Louisiana court cited Section 504 of the Rehab Act, 29 U.S.C. § 794 which provides that an "otherwise qualified individual with handicaps" cannot "solely by reason of his handicap" be denied benefits or suffer discrimination. The court also cited *Doe v. New York University*, 666 F.2d 761 (2nd Cir.1981) which relied on the test outlined in *Southeastern Community College v. Davis*, 442

U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979). However, the court failed to explain how the statute and the holdings of these employment related cases applied to the case before it. The *Pappion* court also failed to consider the purposes behind the Rehab Act. Most significantly, unlike Roe's case, the Louisiana court did not rely on the FHAA.

### V.

■■■ BHA has designated the BCDSS and the BCMHC non-parties who must share pro-rata liability. According to BHA, each of these agencies had a duty under the Rehab Act and the ADA to reasonably accommodate Roe. Citing § 13–21–111.5(1), C.R.S., the Colorado state comparative fault statute, BHA seeks to be held liable only for any damages it caused Roe, not damages caused by Roe himself or these designated non-parties. However, BHA cites no authority for the application of Colorado's comparative fault statute to the federal question claims in this action. Indeed, the ADA, the FHAA, and the Rehab Act do not provide for comparative fault. Consequently, I will grant Roe's motion to strike BHA's designation of non-parties.

### VI.

Roe has filed a motion for interim attorney fees and costs in the amount of $28,798.40. I will deny the motion.

■■■ The Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988 provides that "the court in its discretion, may allow the prevailing party, ... a reasonable attorney's fee as part of the costs." "Plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) *quoting Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). "A plaintiff must receive at least some relief on the merits of his claim before he can be said to prevail." *Hewitt v. Helms*, 482 U.S. 755, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987). Also, "to be considered

a prevailing party within the meaning of § 1988, the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Texas State Teachers' Ass'n. v. Garland Independent School Dist.*, 489 U.S. 782, 792, 109 S.Ct. 1486, 1493–94, 103 L.Ed.2d 866 (1989). Therefore, to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim. *Farrar v. Hobby*, 506 U.S. at ——, 113 S.Ct. at 573. In short, "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.*

■ Roe seeks the interim attorney fees based on the stipulated status quo achieved in this case preventing defendants from proceeding with the eviction against Roe. BHA opposes this because there has been no determination on the merits of Roe's claims which would allow the attorney fees.

I agree with BHA and will deny plaintiff's motion for interim attorney fees. Until there is some favorable determination based on the merits of this action, a request for attorney fees is premature. *See Harris v. Champion*, 15 F.3d 1538, 1572–73 (10th Cir.1994).

Accordingly, it is ORDERED that:

1. defendant City of Boulder's motion to dismiss is DENIED as moot;

2. defendant City of Boulder's motion for summary judgment on all claims against it is GRANTED;

3. defendant BHA's motion for summary judgment is DENIED;

4. plaintiff's motion to strike BHA's designation of non-parties is GRANTED;

5. plaintiff's motion for attorney fees and costs is DENIED without prejudice.