**Joseph L. HOWARD, Plaintiff,**

v.

**CITY OF BEAVERCREEK, Defendant.**

**No. 3:98cv00541.**

United States District Court,
S.D. Ohio,
Western Division.

Aug. 8, 2000.

868

Michael C. Thompson, Dayton, OH, for Plaintiff.

Robert Jerome Surdyk, Jenks, Surdyk & Cowdry Co., Dayton, OH, for Defendant.

## OPINION AND ORDER

MARBLEY, District Judge.

## I. INTRODUCTION

This matter is before the Court on the Defendant's Motion for Summary Judg-

ment. The Plaintiff, Joseph L. Howard, has brought suit under the Fair Housing Amendments Act of 1988, 42 U.S.C. §·3601, ("FHAA"), and under subsections 4112.02(H)(1), (4), (18) and (19) of the Ohio Revised Code, claiming the Defendant denied his request for a variance to the city's zoning law to accommodate his handicap. For the following reasons, the Defendant's Motion for Summary Judgment is **GRANTED**.

## II. FACTS

Howard resides with his wife and son in Beavercreek, Ohio. He has lived at this address since November, 1984. The house is a 1350 square foot single story residential home located on a lot that is 255 feet deep and 110 feet wide. Howard's lot is separated from his neighbors' lots on both sides by a split rail fence, that is less than five feet eight inches in height. There is also a chain link fence thirty feet off the rear of Howard's property which is at least four feet high.

Following conversations with his new neighbors in 1996, Howard became concerned that his neighbors on the west side of his house were spying on him. Howard suffers from post traumatic stress disorder and a heart condition. To alleviate his post traumatic stress, he decided that he wanted to build a six foot fence along his west property line. Howard believes that his stress would be reduced if his neighbors' view was blocked by the fence. Howard also contends that his heart condition would be lessened as the six foot fence would prevent leaves from blowing onto his property, and would eliminate his need to rake.

The fence Howard wishes to build would be seventy feet from the southwest corner of his house, near the street. Under the City of Beavercreek's zoning ordinance, Howard is not permitted to erect the six foot fence along the first forty feet of the boundary running from the right-of-way toward his house without first obtaining a variance from the city's zoning code. The city's zoning ordinance, however, would permit Howard to build a six foot fence along the remainder of his property line without a variance.

Article 18.06.2 of the City of Beavercreek's zoning code provides: "Height of Hedges, Fences and Walls in Required Front Yard: No fence, wall or hedge shall rise over three (3) feet in height within any required front yard." The required front yard within R1–A zoning district is 40 feet from the front property line.

Howard's request for the fence variance was denied by the Board of Zoning Appeals for the City of Beavercreek. This matter is presently before the Court on the Defendant's Motion for Summary Judgment.

## III. STANDARD OF REVIEW

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R.CIV.P. 56(c). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1388–89 (6th Cir.1993). In response, the nonmoving party must present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.,* 8 F.3d 335, 339–40 (6th Cir.1993). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The existence of a mere scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *See Anderson,* 477 U.S. at 251, 106 S.Ct. 2505; *Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir.1995).

## IV. ANALYSIS

### A. Immunity

■ On July 27, 1999, Magistrate Judge Merz submitted a Supplemental Report and Recommendation finding that the Plaintiff's compensatory and punitive damage claims against the City of Beavercreek should be dismissed, as barred by Ohio Revised Code § 2744.02(A)(1). This subsection provides:

> For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

OHIO REV.CODE § 2744.02(A)(1). The Defendant, Beavercreek, is a "political subdivision," *see* OHIO REV.CODE 2744.01(F); and enacting a zoning regulation is a government function. *See Singer v. Fairborn,* 73

Ohio App.3d 809, 598 N.E.2d 806 (1991). Howard, in his Objections to the Report and Recommendation, had argued that he could bring a claim for damages under Ohio Revised Code § 2744.02(B)(5) which provides:

> In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to person or property when liability is expressly imposed upon the political subdivision by a section of the Revised Code, including, but not limited to, sections 2743.02 and 5591.37 of the Revised Code. Liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon a political subdivision, because a general authorization in that section that a political subdivision may sue or be sued, or because that section uses the term "shall" in a provision pertaining to a political subdivision.

In his Objections, he also relied on Ohio Revised Code Section 4112.99 to support his argument that damages are available.

The Court **ADOPTS** Magistrate Merz's Report and Recommendation and agrees that if this Court were to accept Howard's interpretation of sections 2744.02(B)(5) and 4112.99 argument, section 2744.02(A)(1) would be meaningless.

The Court therefore **DISMISSES** the Plaintiff's state law claim for damages.

### B. Exhaustion of State Remedies.

■ Beavercreek argues that Howard has failed to exhaust state procedures, and therefore this Court does not have jurisdiction. Howard responds that the FHAA provides for a private right of action.

Here, Howard has brought a claim of housing discrimination under both state and federal law. This Court will examine separately whether exhaustion is required under either or both of these statutes. Section 2506.01 of the Ohio Revised Code,

relied upon by Beavercreek in its exhaustion argument provides:

> Every final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department, or other division of any political subdivision of the state *may* be reviewed by the court of common pleas of the county in which the principal office of the political subdivision is located . . .

OHIO REV.CODE § 2506.01 (emphasis added). The Court finds that, contrary to Beavercreek's assertion, the plain language of the statute is permissive and not mandatory, in that Howard had the right but was not required to appeal the Board of Zoning's decision to the court of common pleas.

Furthermore, in *Elek v. Huntington National Bank*, 60 Ohio St.3d 135, 573 N.E.2d 1056 (1991), the Supreme Court of Ohio held: "[a]n aggrieved party may, pursuant to R.C. 4112.99, institute an independent civil action to seek redress for discrimination on the basis of physical disability." The court explained in *Elek* that "[a] plain reading of [4112.99] yields the unmistakable conclusion that a civil action is available to remedy any form of discrimination identified in R.C. Chapter 4112." *Id.* at 1057. "[A]ccordingly, R.C. 4112.99 is to be liberally construed to promote its object (elimination of discrimination) and protect those to whom it is addressed (victims of discrimination)." *Id.* at 1058. *See also Vass v. Riester & Thesmacher Co.*, 79 F.Supp.2d 853, 863 (N.D.Ohio 2000) (finding that "[t]he Ohio courts have found 'nothing in R.C. Chapter 4112 that would require reading an exhaustion or remedies requirement into R.C. 4112.99.'") (citation omitted); *Proffitt v. Anacomp, Inc.*, 747 F.Supp. 421, 425 (S.D.Ohio 1990) (finding that "[t]he language of the amended provision [4112.99] is clear and unambiguous— there is no limitation on the right to a civil action.").

These cases leave no doubt that Howard can maintain a private right of action, a claim of discrimination, under Ohio Revised Code Chapter 4112. Moreover, reading *Elek* in conjunction with the language of section 2506.11, this Court concludes that Ohio Revised Code Chapter 4112 does not contain an exhaustion requirement that would prohibit Howard from directly bringing his state law housing discrimination claim before this Court.

■ Similarly, under the FHAA, an individual has a right to bring a civil action directly to federal court. *See Oxford House, Inc. v. City of Virginia Beach*, 825 F.Supp. 1251, 1258 (E.D.Va.1993) (finding that "'[a]n aggrieved person is not required to exhaust the administrative process before filing a civil action. The Committee intends for the administrative proceeding to be a primary, but not exclusive, method for persons aggrieved by discriminatory housing practices to seek redress.'") (quoting H.R. 711, 100th Cong., 2d Sess., at 24, U.S.Code Cong. & Admin.News 1988,, p. 2173 (1988)). *See also* 42 U.S.C. § 3613(a)(2); *Gittleman v. Woodhaven Condo. Assoc., Inc.*, 972 F.Supp. 894, 895 n. 3 (D.N.J.1997) (reaching the conclusion that "[a]n aggrieved party need not exhaust administrative remedies before bringing an action under the FHAA in federal court."); *Ward v. Harte*, 794 F.Supp. 109, 113 (S.D.N.Y. 1992) (finding that "[a] plaintiff need not pursue any administrative remedies at all before filing a suit under the FHA.").

Pursuant to either section 2506.11 of the Ohio Revised Code, or the FHAA, Howard has a private right of action in this Court for an alleged violation of both Section 4112.99 of the Ohio Revised Code and the FHAA.

### C. Federal Fair Housing

The Defendant does not dispute the fact that Howard is handicapped, as he suffers from post traumatic stress disorder. Howard, instead, filed suit to request a reasonable accommodation for his disability under § 3604(f)(3)(B) of the FHAA. The relevant subsection of the FHAA provides that discrimination includes:

[a] refusal to make reasonable accommodations in rule, policies, practices, or services, when such accommodations may be made necessary to afford such person equal opportunity to use and enjoy a dwelling.

42 U.S.C. § 3604(f)(3)(B). The subsection uses four phrases of importance to the present suit: (1) reasonable accommodation, (2) rule, policies, practice or services, (3) necessary to afford equal opportunity and (4) dwelling.[1] The Court will examine each phrase *seriatim* to determine whether, viewing the facts in a light most favorable to Howard, summary judgment should be granted to Beavercreek.

### 1. Reasonable Accommodation

■■ "[A]n accommodation is reasonable unless it requires 'a fundamental alteration in the nature of the program' or imposes 'undue financial and administrative burdens.' ... As the Seventh Circuit has noted, 'cost (to the defendant) and benefit (to the plaintiff) merit consideration as well.'" *Smith & Lee Assoc., Inc., v. City of Taylor,* 102 F.3d 781, 795 (6th Cir.1996) (quoting *Bronk v. Ineichen,* 54 F.3d 425, 429 (7th Cir.1995)). A "reasonable accommodation" has also been defined as "[o]ne which would not impose an undue hardship or burden upon the entity making the accommodation ... and would not undermine the basic purpose which the requirement seeks to achieve." *United States v. Village of Marshall,* 787 F.Supp. 872, 878 (W.D.Wis.1991) (citing *Majors v. Housing Auth. of De Kalb,* 652 F.2d 454, 457 (5th Cir.1981); *Doherty v. Southern College of Optometry,* 862 F.2d 570, 575 (6th Cir.1988).

■ Whether an accommodation is reasonable is a mixed question of law and fact,

see *Rascon v. U.S. West Comm'n Inc.,* 143 F.3d 1324, 1333 (10th Cir.1998), "[w]hich primarily involves the consideration of legal principles." *Keys Youth Serv. v. City of Olathe,* 75 F.Supp.2d 1235, 1246 (D.Kan. 1999) (citing *Rascon,* 143 F.3d at 1333); *but see Fuller v. Frank,* 916 F.2d 558, 562 (9th Cir.1990) (finding under the Rehabilitation Act that "[w]hether the agency has provided 'reasonable accommodation' is ordinarily a question of fact. The employer bears the burden of proving an inability to accommodate.").

Beavercreek argues that the accommodation is not "reasonable" under the FHAA-the fence in question would serve as a "fundamental alteration" to the aesthetic character of the neighborhood, would affect property values, and would pose a safety hazard as it would obstruct the view of vehicular and pedestrian traffic.[2] According to Howard, an accommodation is reasonable unless it imposes an undue financial and administrative burden on the defendant or requires a fundamental alteration in the nature of the program at issue.

Viewing the facts in a light most favorable to the non-movant, Howard, the accommodation could be found by a factfinder to be reasonable. Howard, at his own expense, wants to build a fence whose height on the first forty feet of his front property line will be in excess of the zoning ordinance's limit. The financial burden that would be placed on the Defendant would be minimal. The City argued that the fence would serve as a "fundamental alteration" to the aesthetic character of the neighborhood and would affect property values. This Court does not find concerns for aesthetics and property values to be viable reasons for potentially violating a handicapped individual's rights under the

---

**1.** Beavercreek urges this Court to follow *Monette v. Electronic Data Systems Corporation,* 90 F.3d 1173 (6th Cir.1996), to determine the burdens of proof that are to be allocated in this case. *Monette,* however, was decided under the Americans with Disabilities Act, while the FHAA explicitly provides that this Court should follow the Rehabilitation Act. Second,

*Monette* is an imperfect fit with this case as it dealt with an employment relationship and the present case is one of housing discrimination.

**2.** The Court will discuss the safety aspect of the accommodation in subpart IV. D.

FHAA. *See, e.g., Larkin v. Michigan,* 883 F.Supp. 172, 177 n. 2 (E.D.Mich.1994) (finding under a FHAA claim that "[p]roperty values are often concerns as well, but ... not a legal basis for such restrictions."). This Court therefore finds that, viewing the facts in a light most favorable to Howard, the accommodation could be found to be reasonable.

### 2. Rule, Policies, Practice or Services

■ Next, "rule, policies, practice or services" encompass zoning regulations. *See United States v. Village of Marshall,* 787 F.Supp. 872, 876–77 (W.D.Wis.1991). The legislative history of the FHAA reflects this conclusion:

> The Committee intends that the prohibition against discrimination against those with handicaps apply to zoning decisions and practices. The Act is intended to prohibit the application of special requirements through land-use regulations, restrictive covenants, and conditional or special use permits that have the effect of limiting the ability of such individuals to live in the residence of their choice in the community ...

H.R. 100–711, 100th Cong., at 24 (1988). *See also Innovative Health Sys. v. City of White Plains,* 117 F.3d 37, 44–45 (2d Cir. 1997).

Here, as Howard is contesting the city of Beavercreek's zoning ordinance, it is a rule, policy, practice or service under the FHAA.

### 3. Equal Opportunity and Necessary

■ Equal opportunity under the FHAA has been outlined by the Sixth Circuit:

> [a]s giving handicapped individuals the right to choose to live in single-family neighborhood, for that right serves to end the exclusion of handicapped individuals from the American mainstream. 'The Act prohibits local governments from applying land use regulations in a manner that will exclude people with disabilities entirely from zoning neighborhoods, particularly residential neighborhoods, or that will give disabled people less opportunity to live in certain neighborhoods than people without disabilities.'

*Smith & Lee Assoc. Inc., v. City of Taylor,* 102 F.3d 781, 794–95 (6th Cir.1996) (quoting *Bryant Woods Inn, Inc. v. Howard County, Md.,* 911 F.Supp. 918, 946 (D.Md. 1996)). " '[E]qual opportunity' ... is concerned with achieving equal results, not just formal equality." *Smith,* 102 F.3d at 795.

■ The *Smith* Court opined that "the statute links the term 'necessary' to the goal of equal opportunity ... Plaintiffs must show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice." *Id.* (citing *Bronk v. Ineichen,* 54 F.3d 425, 429 (7th Cir.1995)). The court in *Bronk* found that "[t]he concept of necessity requires at a minimum the showing the desired accommodation will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability." 54 F.3d at 429.

Beavercreek, in essence, argues that the accommodation is not necessary when it contends that it has not denied Howard the right to live in the residence or neighborhood of his choice, as Howard has lived in his home for the past fifteen years and continues to live there.

The Court finds Beavercreek's argument persuasive. The accommodation that Howard has requested is not necessary to afford him "an equal opportunity to enjoy the housing of [his] choice." Without the fence, the Plaintiff stated only he *may* be forced to move from his home. Furthermore, the Plaintiff has lived in his home for fifteen years and continues to live there. In oral argument, the Plaintiff acknowledged that he moved into his home in 1984, and that the difficulties with his new neighbors began in 1996, yet Howard continues to live in his home almost four years later. This time-line demonstrates that the Plaintiff's requested accommoda-

tion is not necessary, as the Plaintiff was in the past, and is presently, enjoying the housing of his choice.

The facts of the present case are similar to those of *Robinson v. City of Friendswood*, 890 F.Supp. 616 (S.D.Tex.1995). In *Robinson*, the plaintiff requested and was denied a variance to the zoning ordinance to build a carport. The ordinance in question required a twenty-five foot setback from the front property line for all residential buildings. *Id.* at 619. The plaintiff claimed that he was disabled by his artificial hip, secondary limp, hypertension and surgery for colon cancer, and believed that the carport would give him a dry place to walk and prevent him from slipping and falling on his walk from his car to his home. *Id.* For the plaintiff's FHAA claim, the court found: "[p]laintiff had the same disabilities and lived in the same house for years before he constructed the carport indicates that ordinance did not prevent him from obtaining housing of his choice nor from living in the community of his choice." *Id.* at 622.[3] The court granted summary judgment to the defendant city on the Plaintiff's FHAA claim. *Id.; see also Keys Youth Serv. v. City of Olathe*, 75 F.Supp.2d 1235, 1247 (D.Kan.1999) (granting summary judgment to the defendant city after finding that the requested accommodation was not necessary to provide equal opportunity).

Here, the facts of this case reflect parallel considerations. Howard, as the plaintiff did in *Robinson*, has lived in his home for several years without the requested accommodation. And in both cases, the plaintiffs have not been denied the ability to live in the neighborhood of their choice. Based on this analysis, the Court

**GRANTS** summary judgment to the Defendant on Howard's FHAA claim.

### 4. Dwelling[4]

■ "Dwelling" is defined as "[a]ny building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof." 42 U.S.C. § 3602(b).

The Code of Federal Regulations bolsters the FHAA by providing:

It shall be unlawful for any person to refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford a handicapped person equal opportunity to use and enjoy a dwelling unit, including public and common use areas.

24 C.F.R. § 100.204(a). "Public use areas" means "interior or exterior rooms or spaces of a building that are made available to the general public. Public use may be provided at a building that is privately or publicly owned." 24 C.F.R. § 100.201. And, under 24 C.F.R. § 100.203(a):

It shall be unlawful for any person to refuse to permit, at the expense of a handicapped person, reasonable modifications of existing premises, occupied or to be occupied by a handicapped person, if the proposed modifications may be necessary to afford the handicapped person full enjoyment of the premises of a dwelling.

"Premises" is defined as "[t]he interior or *exterior spaces*, parts, components or ele-

---

**3.** The plaintiff in *Robinson* also brought a claim under the Americans with Disabilities Act (ADA). In discussing the plaintiff's ADA claim, the court found that "[t]he stipulations filed in this suit indicate that Plaintiff lived in this home with his present disabilities for years without a carport, and he has not shown that he would be forced to move if he

cannot keep his carport. At issue here is convenience, not necessity." *Id.* at 620.

**4.** Although the Court grants summary judgment based upon the "equal opportunity" and "necessary" prongs of the statute, for completeness, the Court will also analyze the applicability of the "dwelling" prong of the statute.

ments of a building, including individual dwelling units and the public and common use areas of a building." 24 C.F.R. § 100.201 (emphasis added).

Here, the term "dwelling" if read broadly, and in conjunction with the term "premises," could be said to encompass the front yard of Howard's home. *See* 24 C.F.R. § 100.201.

### D. Safety

■ The Court further finds as a second basis for granting the Defendant's motion for summary judgment, the issue of the safety hazard posed by the fence. The Defendant argues that the six foot fence running parallel to Howard's driveway would obstruct the view of pedestrian and vehicle traffic, resulting in possible risk of injury to Howard, his family and members of the community.

■ The relevant subsection of the FHAA provides that "[n]othing in this subsection requires that a dwelling be made available to an individual who tenancy would constitute a direct threat to the health or safety of other individuals or whose tenancy would result in substantial physical damage to the property of others." 42 U.S.C. § 3604(f)(9). "Invocation of the 'direct threat' exemption requires 'objective evidence that is sufficiently recent as to be credible, and not from unsubstantiated inferences, that the applicant will pose a direct threat to the health and safety of others....'" *United States v. Massachusetts Indus. Fin. Agency*, 910 F.Supp. 21, 27 (D.Mass.1996) (quoting H.R.Rep. No. 711, 100th Cong., 2d Sess. (1988)). "[A] person who constitutes a direct threat to others is not eligible for the benefits provided by the FHAA." *Roe v. Housing Auth. of Boulder*, 909 F.Supp. 814, 822 (D.Colo.1995); *but see Roe v. Housing Auth. of Boulder*, 909 F.Supp. 814, 823–24 (D.Colo.1995) (holding that "[b]efore [the plaintiff] may lawfully be evicted [the housing authority] must demonstrate that no 'reasonable accommodation' will eliminate or acceptably minimize any risk [the plaintiff] poses to other resi-

dents ..."); *Roe v. Sugar River Mills Assocs.*, 820 F.Supp. 636, 640 (D.N.H.1993) (finding that the "[d]efendants [must] demonstrate that no 'reasonable accommodation' will eliminate or acceptably minimize the risk [the plaintiff] poses to other residents ... before they may lawfully evict him.); *Cason v. Rochester Hous. Auth.*, 748 F.Supp. 1002, 1009 (W.D.N.Y.1990) (finding that "'[u]nfounded speculations about threats to safety are specifically rejected as grounds to justify exclusion [from housing.]'") (quoting H.R. No. 711, 100th Cong.2d Sess. 5 (1988)).

Here, the uncontroverted evidence is that the fence poses a threat to pedestrian and vehicular traffic. The Court finds, accordingly, that the six foot fence on the first forty feet of Howard's property constitutes a direct threat to the safety of Howard, his family and members of the community, and would obstruct the view of pedestrian and vehicle traffic. Thus, pursuant to 42 U.S.C. § 3604(f)(5)(A), to be in compliance with the FHAA, the Defendant is not required to grant the zoning variance requested by Howard.

### E. State Law Claims

The Plaintiff alleged a violation of Ohio Revised Code § 4112.02(H)(1), (4), (18)(a) and (19). Under the Ohio Revised Code, it shall be unlawful discriminatory practice:

(H) For any person to do any of the following:

(1) Refuse to sell, transfer, assign, rent, lease, sublease, or finance housing accommodations, refuse to negotiate for the sale or rental of housing accommodations, or otherwise deny or make unavailable housing accommodations because of race, color, religion, sex, familial status, ancestry, handicap, or national origin; ...

(4) Discriminate against any person in the terms or conditions of selling, transferring, assigning, renting, leasing, or subleasing any housing accommodations or in furnishing facilities, services, or privileges in connection with the ownership, occupancy, or use of any housing

**876**

accommodations, including the sale of fire, extended coverage, or homeowners insurance, because of race, color, religion, sex, familial status, ancestry, handicap, or national origin or because of the racial composition of the neighborhood in which the housing accommodations are located; . . . .

(18)(a) Refuse to permit, at the expense of a handicapped person, reasonable modifications of existing housing accommodations that are occupied or are to be occupied by the handicapped person, if the modifications may be necessary to afford the handicapped person full enjoyment of the housing accommodations.

(19) Refuse to make reasonable accommodations in rules, policies, practices, or services when necessary to afford a handicapped person equal opportunity to use and enjoy a dwelling unit, including associated public and common use areas.

OHIO REV.CODE § 4112.02(H)(1), (4), (18) and (19).

Here, the only applicable sections of the Ohio Revised Code are 4112.02(H)(18)(a) and (19),[5] which are quite similar to that of the FHAA. Specifically, subsections (18)(a) and (19) include the term "necessary" as element for finding that a discrimination has occurred. The Court adopts the same analysis as under the FHAA and concludes that Howard's requested accommodation is not necessary under sections 4112.02(H)(18)(a) and (19). The Court therefore **GRANTS** the Defendant's Motion for Summary Judgment on the Plaintiff's Ohio Revised Code claim.

## V. CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment is **GRANTED** in its entirety.

**IT IS SO ORDERED.**

---

5. Subsections (H)(1) and (4) speak to selling, transferring, assigning, renting and leasing which are not at issue here.