[Cite as *Cincinnati Metro. Hous. Auth. v. Brown*, 2013-Ohio-4143.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| CINCINNATI METROPOLITAN HOUSING AUTHORITY, | : | APPEAL NO. C-120580 TRIAL NO. 12CV-02818 |
| | : | |
| Plaintiff-Appellee, | | |
| | : | |
| vs. | | *O P I N I O N.* |
| | : | |
| LEAH D. BROWN, | | |
| | : | |
| Defendant-Appellant. | : | |

Civil Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: September 25, 2013

*Angela Stearns*, for Plaintiff-Appellee,

*Legal Aid Society of Greater Cincinnati* and *Virginia Tallent*, for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

CUNNINGHAM, Judge.

{¶1} Defendant-appellant Leah D. Brown contests the trial court's entry of summary judgment in favor of her landlord, plaintiff-appellee the Cincinnati Metropolitan Housing Authority ("CMHA"), on its action for forcible entry and detainer. Brown also challenges the trial court's denial of her motion for partial summary judgment on her counterclaim seeking money damages for CMHA's alleged violations of federal fair housing laws. CMHA initiated this eviction action when Brown threatened and yelled racially derogatory names at another public-housing tenant. Because Brown engaged in criminal activity which posed a direct threat to other tenants, CMHA was entitled to terminate her lease and we affirm.

{¶2} Brown had been a CMHA public-housing tenant since 2007. She suffers from bipolar and panic disorders, and from multiple physical disabilities affecting her mobility. Her lease included a federally mandated "zero tolerance" provision that permitted CMHA to terminate her tenancy if Brown engaged in criminal activity that threatened the health, safety, or right to peaceful enjoyment of another tenant. *See, e.g., Cincinnati Metro. Hous. Auth. v. Browning*, 1st Dist. Hamilton No. C-010055, 2002-Ohio-190, ¶ 3.

{¶3} In December 2011, Brown threatened and yelled racially derogatory names at her fellow public-housing tenant Maimou Ndiaye. Brown was charged with menacing and ethnic intimidation. She ultimately pled guilty to charges of disorderly conduct. CMHA investigated the incident, determined that Brown posed a direct threat to other residents, and served Brown with notice that it was

2

terminating her lease. When Brown failed to vacate, CMHA filed this action seeking her eviction. *See Browning* at ¶ 27.

{¶4} In response, Brown urged CMHA to make reasonable accommodations for her disabilities, under the federal Fair Housing Amendments Act ("the FHAA"). *See* 42 U.S.C. 3604. She requested that CMHA dismiss its eviction action and that the housing authority participate in a behavioral-intervention plan, including a provision that CMHA would contact Brown's "case manager and/or therapist if concerns related to her tenancy arose in the future." The housing authority denied the request. Brown then filed an amended answer to the eviction action and raised a counterclaim, in both of which she asserted that CMHA had discriminated against her based upon her disabilities.

{¶5} CMHA moved for summary judgment on its forcible-entry-and-detainer action relying, in part, upon the attached affidavit of the assistant property manager at Brown's housing unit. Brown filed a memorandum in opposition and also filed a motion for partial summary judgment on her housing-discrimination counterclaim. She reserved the issue of damages and fees for trial. On August 14, 2012, the trial court issued its entry granting CMHA's motion for summary judgment and issuing a writ of restitution of the premises. The court also denied Brown's motion for partial summary judgment. The trial court stayed its judgment pending Brown's appeal.

{¶6} The trial court's entry granted the housing authority a present right to possession of the property. Thus the trial court's judgment was immediately appealable by Brown even though other claims remained for adjudication. *See Cuyahoga Metro. Hous. Auth. v. Jackson*, 67 Ohio St.2d 129, 132, 423 N.E.2d 177

(1981) (holding Civ.R. 54[B] inapplicable in forcible-entry-and-detainer proceedings).

{¶7} In her first assignment of error, Brown argues that the trial court erred in entering summary judgment in favor of CMHA on its eviction action. We review cases decided on summary judgment de novo, without deference to the trial court's determinations. *See Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8.

{¶8} Civ.R. 56(A) makes summary judgment available to a party seeking to recover upon a claim or counterclaim. Where, as here, a party seeks affirmative relief on its own claim or counterclaim as a matter of law, it bears the burden of affirmatively demonstrating that there are no genuine issues of material fact with respect to every essential element of its claim. *See* Civ.R. 56(A); *see also Capital Fin. Credit, LLC v. Mays*, 191 Ohio App.3d 56, 2010-Ohio-4423, 944 N.E.2d 1184, ¶ 4 (1st Dist.). Its motion for summary judgment must be denied if the party fails to satisfy this initial burden. Only when the movant has met its initial burden does the nonmoving party's reciprocal burden to establish the existence of triable, genuine issues of material fact, by the means listed in Civ.R. 56(C) and 56(E), arise. *See Capital Fin. Credit, LLC* at ¶ 5; *see also Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996).

{¶9} The substantive law governing CMHA's eviction action and Brown's discrimination counterclaim identifies the factual issues that are material and thus could preclude summary judgment. *See Gross v. Western-Southern Life Ins. Co.*, 85 Ohio App.3d 662, 666-667, 621 N.E.2d 412 (1st Dist.1993). The FHAA makes it unlawful to discriminate against a tenant on the basis of that person's mental or

4

physical disability. *See* 42 U.S.C. 3604(f). But federally subsidized public-housing authorities, such as CMHA, are also charged with providing "decent and safe dwellings" for all of their tenants. 42 U.S.C. 1437(a)(1)(A). To achieve that end, Congress modified federal fair housing laws in 1988. The FHAA now provides that:

> Each public housing agency shall utilize leases which * * * provide that any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants or any drug-related criminal activity on or off such premises, engaged in by a public housing tenant, any member of the tenant's household, or any guest or other person under the tenant's control, shall be cause for termination of tenancy.

42 U.S.C. 1437d(l)(6). Brown's lease includes this provision.

{¶10} In affirming the constitutionality of the act's eviction provision, the United States Supreme Court held that 42 U.S.C. 1437d(l)(6) "unambiguously requires lease terms that vest local public housing authorities with the discretion to evict tenants for the drug-related activity of household members * * * ." *Dept. of Hous. and Urban Dev. v. Rucker*, 535 U.S. 125, 130, 122 S.Ct. 1230, 152 L.Ed.2d 258 (2002). The decision to evict is entrusted to the public housing authorities, who are in the best position to take account of, inter alia, the seriousness of the offending action, the duration of the problem, the administrative burden on the housing authority, and the extent to which the tenant has taken reasonable steps to prevent or mitigate the offending action. *See id.* at 134; *see also Groner v. Golden Gate Gardens Apts.*, 250 F.3d 1039, 1046 (6th Cir.2001). The holding applies equally when non-drug-related criminal activity threatens the safety of other tenants. *See*

*Portage Metro. Hous. Auth. v. Brumley*, 11th Dist. Portage No. 2008-P-0019, 2008-Ohio-5534, ¶ 85. Thus a public housing authority has the discretion to terminate a lease if a tenant engages in criminal activity that threatens another tenant's health, safety, or right to peaceful enjoyment of the housing premises. *See id.*

{¶11} Brown argues that she was entitled to reasonable accommodations for her disabilities before CMHA reached a decision to evict her. She notes that the refusal "to make reasonable accommodations in rules, policies, practices, or services" when the accommodations may be necessary to afford the disabled individual an equal opportunity to use and enjoy housing, is a type of unlawful discrimination under the FHAA. 42 U.S.C. 3604(f)(3)(B). The agencies tasked with executing and monitoring the FHAA advise that a housing authority ought to grant accommodation requests where the tenant's attorney provides satisfactory assurances "that the [tenant] will receive appropriate counseling and periodic medication monitoring." Joint Statement of the Department of Housing and Urban Development and the Department of Justice, Reasonable Accommodations Under the Fair Housing Act 5-6 (May 17, 2004).

{¶12} But the FHAA does not mandate the automatic accommodation of tenants who would harm other residents. In amending the federal housing laws in 1988, Congress recognized the importance of providing safe housing for low-income tenants, and made "clear that housing need not be made available to persons whose impairments make them dangerous to others." Schwemm & Allen, *For the Rest of Their Lives: Seniors and the Fair Housing Act*, 90 Iowa L.Rev. 121, 161-162 (2004). While an agency's interpretation is due substantial deference, there is no language in the FHAA or in the relevant implementing regulations that would impose a duty on

6

landlords and tenants to engage in an interactive process to accommodate Brown's disability. *See Groner*, 250 F.3d at 1047.

{¶13} The FHAA does, however, expressly provide that "nothing" in the subsection that makes discrimination unlawful—including the failure to make reasonable accommodations—requires a landlord to provide housing for "an individual whose tenancy would constitute a direct threat to the health or safety of other individuals or whose tenancy would result in substantial physical damage to the property of others." 42 U.S.C. 3604(f)(9).

{¶14} In light of Congress' unequivocal instruction, "a person who constitutes a direct threat to others is not eligible for the benefits provided by the FHAA." *Howard v. City of Beavercreek*, 108 F.Supp.2d 866, 875 (S.D.Ohio 2000), quoting *Roe v. Hous. Auth. of Boulder*, 909 F.Supp. 814, 822 (D.Colo.1995). As the United States Court of Appeals for the Tenth Circuit has held, the direct-threat provision of 42 U.S.C. 3604(f)(9) permits reasonable restrictions on the terms or conditions of housing when justified by public safety concerns, "given that housing can be *denied altogether* for those same reasons." Emphasis added. *Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1503 (10th Cir.1995); *see also Laflamme v. New Horizons, Inc.,* 605 F.Supp.2d 378, 386 (D.Conn.2009) (the anti-discrimination protections of the FHAA do not extend to individuals whose tenancy would constitute a direct threat to the health or safety of other tenants); *Stout v. Kokomo Manor Apts.,* 677 N.E.2d 1060, 1065 (Ind.App.1997).

{¶15} We note that any housing restriction or denial predicated on public safety must be narrowly tailored to specific concerns about an individual tenant and cannot be based on prejudice or blanket stereotypes about persons with disabilities.

7

*See Bangerter* at 1503, citing H.R.Rep. No. 100-711, 100th Cong., 2d Sess., at 24 (1988), reprinted in 1988 U.S.C.C.A.N. 2173, 2185.

{¶16} Here, CMHA's termination of Brown's tenancy was not based upon the housing authority's speculation or its subjective fear of Brown. It was based upon objective evidence of Brown's behavior and overt acts which directly threatened harm to other residents. The materials attached to CMHA's motion for summary judgment, including the affidavit of the investigating property manager, established that in 2009 CMHA had received complaints about Brown's behavior from other residents, that in 2011 she had been arrested for screaming racial epithets in a threatening manner at Ndiaye, that Ndiaye and another tenant had vacated their units in response to Brown's threats, that the manager had met with Brown to discuss the incident, that Brown had pled guilty to a criminal offense resulting from that incident, that Brown's actions violated the zero tolerance provision of her lease, and that CMHA had determined her to be a direct threat to other tenants. Thus CMHA discharged its affirmative burden of demonstrating the absence of genuine issues of material fact with respect to every essential element of its forcible-entry-and-detainer claim.

{¶17} Moreover, Brown was unable to discharge her reciprocal duty of demonstrating the existence of genuine issues of material fact which would have precluded summary judgment for CMHA, and which would have entitled her to summary judgment on her affirmative defense and counterclaim. *See Dresher*, 75 Ohio St.3d at 293, 662 N.E.2d 264; *see also Todd Dev. Co. v. Morgan*, 116 Ohio St.3d 461, 2008-Ohio-87, 880 N.E.2d 88, ¶ 24 (a party moving for summary judgment

8

does not bear the initial burden of disproving the nonmoving party's affirmative defenses); *Groner*, 250 F.3d at 1045.

{¶18} Brown's memorandum and motion were supported by her own affidavit, the deposition testimony of CMHA property managers, and two one-paragraph letters from her treating psychiatrist and a doctor of osteopathy. Her healthcare providers described Brown's mental illness and her physical limitations and indicated that she had been receiving treatment for the conditions. But neither doctor made any statement that Brown's threatening activity was a result of her disabilities. Neither made any statement that an accommodation would alleviate the threat to the health and safety of other tenants. Despite having received long-term treatment for her disabilities, Brown was unable to prevent the 2011 incident and has not demonstrated how a behavioral-modification plan would negate the threat that she has posed to other residents.

{¶19} Because CMHA has a legitimate interest in ensuring the safety and quiet enjoyment of all its tenants, and because CMHA has demonstrated that no genuine issue of material fact remains as to whether Brown engaged in criminal activity and that her actions were a direct threat to other tenants, CMHA is entitled to summary judgment on its forcible-entry-and-detainer action. The first assignment of error is overruled.

{¶20} In her second assignment of error, Brown asserts that the trial court erred in rejecting her reasonable-accommodation defense and in "dismissing [her] Counterclaim." Appellant's Brief at 1. In light of our resolution of the first assignment of error, that portion of the second assignment of error asserting that the trial court erroneously rejected her affirmative defense is overruled.

{¶21} The remainder of her argument must also fail. Brown's challenge is based upon the false premise that the trial court's August 2012 entry dismissed her counterclaim. It did not. The trial court simply denied Brown's partial summary-judgment motion seeking affirmative relief, as a matter of law, on her counterclaim. *See* Civ.R. 56(A). Brown's counterclaim for money damages remains in the trial court for ultimate resolution. Since the record certified for our review does not demonstrate the erroneous dismissal of the counterclaim, we overrule the remainder of the second assignment of error.

{¶22} Therefore, the trial court's judgment is affirmed.

Judgment affirmed.

**HILDEBRANDT, P.J.,** and **FISCHER, J.**, concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.