IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ROBERT KRAVIS, | § | |
| | § | |
| Defendant Below, | § | No. 311, 2022 |
| Appellant, | § | |
| | § | Court Below: Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| JUSTICE OF THE PEACE | § | C.A. No. S22A-04-001 |
| COURT 17, and | § | |
| MHC MCNICOL PLACE, LLC, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: March 1, 2023
Decided: April 17, 2023

Before **SEITZ,** Chief Justice; **VAUGHN** and **TRAYNOR**, Justices.

## ORDER

Upon consideration of the parties' briefs and the record on appeal, and after oral argument, it appears to the Court that:

(1) MHC McNicol Place, LLC ("MHC"), a corporate landlord leasing land for manufactured housing units, brought a fault-based eviction action in the Justice of the Peace Court against Robert Kravis, a tenant and homeowner. MHC claimed that Kravis violated his lease with MHC by allowing Kravis's grandson and the grandson's girlfriend, who had not been pre-approved by MHC, to stay at his residence. Kravis defended the eviction action by claiming that, regardless of the

tenant pre-authorization requirement under the lease, MHC was required to make reasonable accommodation for him when he returned home after a two-year nursing home stay. The reasonable accommodation, according to Kravis, was permitting his grandson and the grandson's girlfriend to reside with Kravis to assist with his recuperation.

(2) At trial in the Justice of the Peace Court, the court refused to consider Kravis's reasonable accommodation defense because MHC did not pre-approve the occupancy of the grandson and the grandson's girlfriend as required by the lease. Also, the court found their residency applications untimely and therefore did not allow Kravis to pursue discovery into the reasons MHC denied his later-submitted applications for his grandson and the grandson's girlfriend. The Justice of the Peace Court awarded MHC possession. The Superior Court affirmed.

(3) After considering the arguments on appeal, we reverse. Under state and federal fair housing laws, a tenant can seek reasonable accommodation from a landlord up to the time of eviction. Kravis requested reasonable accommodation before eviction. Also, the court should have permitted Kravis to pursue discovery into the reasons why MHC turned down Kravis's residency applications for his grandson and the grandson's girlfriend.

(4)     MHC owns a lot that it leased to Kravis as a homeowner.  The rental agreement required management approval for new residents.[1]  Sometime before January 2020, Kravis's grandson and the grandson's girlfriend moved into Kravis's manufactured home.[2]  Kravis alleged that, after they moved in, they provided support and caregiving services to him.[3]  In January 2020, Kravis became sick and checked in to a nursing home, where he stayed until early 2022.[4]  In October 2020, MHC became aware of the grandson and his girlfriend living in Kravis's home after a tree fell and damaged it.[5]  That following May, MHC sent a letter to Kravis, informing him that he was in violation of the rental agreement.[6]  The letter stated that Kravis had failed to fix the damage caused by the tree and had unauthorized occupants living in the home.  On June 16, 2021, MHC sent a second letter, this time terminating the lease because Kravis had failed to correct the alleged violations.[7]  The next day, MHC brought an eviction action against Kravis in the Justice of the Peace Court.

---

[1] App. to Opening Br. at A030 (rental agreement).
[2] *MCH McNicol Place v. Kravis*, Del. J.P., C.A. No. JP17-21-002617, at 2 (Dec. 23, 2021) [hereafter Initial JP Order].
[3] App. to Opening Br. at A047-49 (reasonable accommodation request).
[4] *MCH McNicol Place v. Kravis*, Del. J.P., C.A. No. JP17-21-002617, at 2 (Mar. 24, 2022) [hereafter Second JP Order].
[5] Initial JP Order at 2.
[6] App. to Opening Br. at A023-24 (notice of lease violation).
[7] *Id*. at A031-32 (notice of termination).

(5) Due to the COVID-19 pandemic, the case progressed slowly through the eviction process. The court eventually scheduled a bench trial in December 2021.[8] The parties agreed that the trial would be limited to whether the presence of unauthorized occupants violated the lease. The court found in favor of MHC. It concluded that MHC had complied with the requirements of 25 *Del* C. § 7016,[9] the section of the Delaware Landlord-Tenant Code that governs termination of a lease for a manufactured home. The court refused to consider Kravis's only defense – his alleged disability and the need for caregiving assistance from his grandson and the grandson's girlfriend.[10] It reasoned that Kravis had not followed the process to get management approval for his grandson and the girlfriend to reside at the property and awarded possession to MHC.

(6) After the single judge Justice of the Peace awarded possession but before the next appeal, Kravis submitted a residency application for his grandson

---

[8] Initial JP Order.

[9] The landlord relied on 25 *Del* C. § 7016(b)(2) and (g). Section (b)(2) provides that, "[i]f the noncompliance is based upon a condition on or of the premises of the manufactured home community, the landlord shall notify the tenant in writing, specifying the condition constituting the noncompliance and allowing the tenant 12 days from the date of mailing or personal service to remedy the noncompliance. If the tenant remains in noncompliance at the expiration of the 12-day period, whether or not the 12-day period falls within 1 lease period or overlaps 2 lease periods, the landlord may immediately terminate the rental agreement and bring an action for summary possession." Section (g) provides that "[a] landlord's right to terminate a rental agreement prior to the expiration of the agreement or right to refuse to renew at the expiration of the agreement does not arise until the landlord has complied with the applicable notice provision upon which the landlord is relying for the termination or non-renewal of the agreement."

[10] Initial JP Order at 3.

4

and the girlfriend.[11]  MHC denied the applications on December 10, 2021 without any explanation.  On December 23, 2021, Kravis appealed the order of possession to a three-justice panel in the Justice of the Peace Court.[12]  On January 3, 2022, Kravis sent a letter to MHC asking for an explanation for the denial of the residency applications and requesting reasonable accommodation.    The letter stated that Kravis had a traumatic brain injury and had suffered several strokes.  He asked MHC to authorize the occupancy of his grandson and the girlfriend because they "provided and will continue to provide, once Mr. Kravis returns home, assistance to Mr. Kravis in his activities of daily living."[13]

(7)    On February 4, 2022, MHC responded to the letter and stated that the application was denied because of the applicants' credit scores and criminal histories.[14]  It also stated that the reasonable accommodation request was not ripe because Kravis was not presently residing at the property.  He was still in the nursing home.

---

[11] App. to Opening Br. at A047 (reasonable accommodation request).
[12] *Id*. at A041 (notice of appeal).  Under 25 *Del.* C. § 5717, "a party aggrieved by the judgment rendered in such proceeding may request in writing, within 5 days after judgment, a trial de novo before a special court comprised of 3 justices of the peace other than the justice of the peace who presided at the trial, as appointed by the chief magistrate or a designee, which shall render final judgment, by majority vote, on the original complaint within 15 days after such request for a trial de novo."
[13] *Id.* at A048.
[14] *Id.* at A050 (MHC February 4 Letter).

(8)     Five days later, Kravis filed a motion for discovery.[15]  He asked MHC to explain the reasons for denying the applications and to produce copies of the credit and criminal history reports used to deny the applications, as well as provide copies of the standards or guidelines that MHC uses to evaluate applications.  Kravis also served MHC with a subpoena requesting similar information.[16]  MHC moved to quash the subpoena.  On February 15, 2022, the court denied the motion for discovery.[17]  Kravis filed a motion for reconsideration.[18]

(9)     The three-justice panel conducted a trial *de novo* on February 24, 2022.[19]  Prior to the trial, the panel denied Kravis's motion for reconsideration and granted MHC's motion to quash the subpoena.  It determined that the information Kravis was seeking in the discovery motion and the subpoena was related to the denial of the applications in "late December 2021/early January 2022."[20]  It found that "because the applications were not submitted during the time this action was filed, nor during the timeframe allowed to cure, the information requested [was] irrelevant."[21]  At the trial *de novo*, there was testimony from MHC about the

---

[15] *Id.* at A033-38 (Kravis's motion for discovery).
[16] *Id.* at A039-40 (subpoena).
[17] *Id.* at A011 (Justice of the Peace Court docket entry).
[18] *Id.* at A043-46 (motion for reconsideration).
[19] Second JP Order.
[20] *Id.* at 2.  Kravis and MHC agreed that the denial took place on December 10, 2021. *See* App. to Opening Br. at A047 (reasonable accommodation request); Answering Br. at 3.
[21] Second JP Order at 2.

unauthorized occupancy of the property by the grandson and his girlfriend.[22] There was also testimony that MHC had taken the proper steps under the Landlord-Tenant Code to effect the eviction. Kravis also testified that "the grandson and girlfriend were acting as caregivers for him because he had recently been released from the hospital."[23]

(10) The court acknowledged that Kravis was disabled and needed caregivers. But it also thought that his caregivers must be approved by management to continue residing at the property. It went on to say that "had [the] grandson and girlfriend applied in a timely manner, even prior to the judgment below, the outcome may have been different."[24] It reasoned that to "allow the tenant to remain, with no change in conditions, would set a precedent that would handicap every landlord faced with the eviction of aged or infirmed tenants, whose caregivers do not abide by the rules."[25] It awarded possession to MHC. On April 8, 2022, Kravis petitioned for a writ of *certiorari* to appeal the Justice of the Peace Court's decision to the Superior Court.[26] The Superior Court allowed the petition but affirmed the

---

[22] *Id.* at 2-3.
[23] *Id.* at 3.
[24] *Id.* The Justice of the Peace Court was mistaken. Kravis did apply prior to the December 23, 2021 Judgment. As mentioned above, both parties agree that Kravis's application was denied on December 10, 2021.
[25] *Id.*
[26] App. to Opening Br. at A051-59 (Kravis's petition for writ of *certiorari*).

decision.[27]  Without an appeal as of right to this Court, Kravis petitioned for a writ of *certiorari*.

(11)  A writ of *certiorari* is not an ordinary appeal.  Our review is on the record and we do not weigh the evidence or review anew the Justice of the Peace Court's factual findings.[28]  We consider whether the Justice of the Peace Court "(1) committed errors of law, (2) exceeded its jurisdiction, or (3) proceeded irregularly."[29]  And "[a] decision will be reversed for an error of law committed by the lower tribunal when the record affirmatively shows that the lower tribunal has 'proceeded illegally or manifestly contrary to law.'"[30]

(12)  Kravis claims that the Justice of the Peace Court proceeded manifestly contrary to law.  First, Kravis argues that the court erred by failing to consider his reasonable accommodation defense under 42 U.S.C. § 3604(f)(3)(B) and 6 *Del.* C. § 4603A(a)(2) (collectively, the "Fair Housing Acts").[31]  He contends that the Fair Housing Acts prohibit discrimination based on disability and make it illegal to refuse to provide reasonable accommodation for the disability.  He argues that the court was required to at least consider whether his accommodation request was reasonable

---

[27] *Kravis v. Justice of the Peace Court 17*, 2022 WL 3698380 (Del. Super. Ct. Aug. 26, 2022).

[28] *Maddrey v. Justice of Peace Court 13*, 956 A.2d 1204, 1212-13 (Del. 2008).

[29] *Id.* at 1213.

[30] *Id.* at 1214 (alterations in original) (internal quotation marks omitted) (quoting *Christiana Town Ctr., LLC v. New Castle Cnty.*, 865 A.2d 521 (Del. 2004)).

[31] Both laws make it illegal to refuse "to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling."

under the Fair Housing Acts.  According to Kravis, the court treated the Delaware Landlord-Tenant Code as the only relevant law.

(13)   Under the Fair Housing Acts, discrimination in the rental of a dwelling because of a person's disability is illegal.  Discrimination includes refusing "to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."[32]  Simply requesting an accommodation does not guarantee it will be accepted.  The accommodation itself must be reasonable.  In other words, the accommodation must be "one which would not impose an undue hardship or burden upon the entity making the accommodation."[33]  In the context of an eviction

---

[32] 42 U.S.C. § 3604(f)(3)(B); 6 *Del.* C. § 4603A(a)(2); *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 115 S. Ct. 1776, 131 L. Ed. 2d 801, 729 (1995) (alteration in original) ("Discrimination covered by the FHA includes 'a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [handicapped] person[s] equal opportunity to use and enjoy a dwelling.'"); *Walker v. City of Wilmington*, 2014 WL 4407977, at *6 (Del. Ch. Sept. 5, 2014); Robert G. Schwemm, *Michael Allen, For the Rest of Their Lives: Seniors and the Fair Housing Act*, 90 Iowa L. Rev. 121, 180 (2004) ("On the other hand, no FHA-covered housing is permitted to discriminate against any buyer or renter because that person has a disability or resides or is associated with someone who does.").

[33] *United States v. Vill. of Marshall, Wis.*, 787 F. Supp. 872, 878 (W.D. Wis. 1991); *see also Roe v. Sugar River Mills Associates*, 820 F. Supp. 636, 640 (D.N.H. 1993) ("[T]he Act requires defendants to demonstrate that no 'reasonable accommodation' will eliminate or acceptably minimize the risk he poses to other residents at Sugar River Mills, before they may lawfully evict him."); Keith P. Ronan, *Navigating the Goat Paths: Compulsive Hoarding, or Collyer Brothers Syndrome, and the Legal Reality of Clutter*, 64 Rutgers L. Rev. 235, 260 (2011) (citing *Howard v. City of Beavercreek*, 108 F. Supp. 2d 866, 875 (S.D. Ohio 2000), aff'd, 276 F.3d 802 (6th Cir. 2002)) ("Luckily, federal courts have interpreted the Fair Housing Act to hold 'that this exception does not come into play until after the trial court has evaluated the landlord's response to a requested accommodation and has determined . . . that no reasonable accommodation could ameliorate the situation sufficiently to protect the health, safety, and property of others.'").

action, the request can be made any time before the tenant is "actually evicted."[34] This means that the timeline to make a request is not controlled by the cure period – the deadline for the tenant to remedy or correct the reason for the eviction – that typically accompanies a notice of termination in Delaware.

(14)  Kravis requested reasonable accommodation on January 3, 2022.  The second trial *de novo* took place on February 24, 2022.  Thus, Kravis timely submitted

---

[34] *Radecki v. Joura*, 114 F.3d 115, 116 (8th Cir. 1997). *See also Douglas v. Kriegsfeld*, 884 A.2d 1109, 1121 (D.C. 2005) (footnote omitted) (quoting *Radecki*, 114 F.3d at 116 ) ("a discriminatory denial can occur at any time during the entire period before a tenant is 'actually evicted'; actionable discrimination is not limited to the shorter cure period specified in a notice to cure or quit, or to any other period short of the eviction order itself."); *Hirsch v. Hargett*, 2019 WL 2613453, at *5 (C.D. Cal. June 26, 2019) (citing *Radecki*, 114 F.3d at 116) ("A discriminatory denial under the FHAA can occur at any time during the entire period before a tenant is actually evicted."); *Sinisgallo v. Town of Islip Hous. Auth.*, 865 F. Supp. 2d 307, 339 (E.D.N.Y. 2012) (citing *Radecki*, 114 F.3d at 116) ("Relevant to the Plaintiffs' FHA claim is not only the existence of a disability, but whether the IHA was aware of the disability when making the decision to terminate the tenancy.  The relevant date for the purpose of establishing the IHA's knowledge is not when the IHA sent the initial eviction notice, but when the Plaintiffs are actually evicted."); *Cornwell & Taylor LLP v. Moore*, 2000 WL 1887528, at *3 (Minn. Ct. App. Dec. 22, 2000) (citing *Radecki*, 114 F.3d at 116) ("But in determining whether a tenant has provided his landlord with adequate information regarding his handicap, courts look at the information available to the landlord on the date the tenant was actually evicted."); *Lebanon Cnty. Hous. Auth. V. Landeck*, 967 A.2d 1009, 1014 (Pa. Super. Ct. 2009) ("Because Tenant had not been 'actually evicted' at the time of trial, the trial court should have considered evidence up until the date of the trial."); *Rutland Court Owners, Inc. v. Taylor*, 997 A.2d 706, 711 (D.C. 2010) (citing *Radecki*, 114 F.3d at 116) ("On appeal, we dismissed the notion that the request was not timely made where federal case law held that a discriminatory act can occur at any point prior to when a tenant is 'actually evicted.'"); Brian Gilmore, *"Have You Seen Her?": Mental Health and the Reasonable Accommodations Defense in Landlord Tenant Proceedings*, 20 J.L. SOCIETY 141, 163 (2020) ("The issue of when an accommodation can be requested and whether landlords knew of a tenant's disability before evicting a tenant is determined as of the date a tenant is actually evicted under the Fair Housing Act."); Christopher C. Ligatti, *Cluttered Apartments and Complicated Tenancies: A Collaborative Intervention Approach to Tenant "Hoarding" Under the Fair Housing Act*, 46 SUFFOLK U.L. REV. 79, 88-9 (2013) (footnote omitted) (citing *Radecki*, 114 F.3d at 116) ("There is also no particular timing requirement. In eviction cases, for instance, reasonable accommodation requests can be made at any time prior to the actual physical eviction of the tenant.").

the residency applications as part of his request for reasonable accommodation. The Justice of the Peace Court acknowledged that "[t]he grandson and girlfriend were acting as caregivers for [Kravis]."[35] Thus, the court should have considered the defense and decided whether the accommodation "impose[d] an undue hardship or burden" under the Fair Housing Acts. The Justice of the Peace Court erred as a matter of law by focusing exclusively on the Delaware Landlord-Tenant Code.

(15) The second issue on appeal overlaps with the first. In his discovery motion, Kravis asked the court to compel MHC to provide information on why MHC denied the residency applications. The court ruled that the information was irrelevant because the applications were untimely. Now that we have reversed the court on the reasonable accommodation defense, limited discovery into the defense is appropriate.

(16) Our ruling is limited to whether the Justice of the Peace Court erred by not considering Kravis's reasonable accommodation defense and not allowing discovery relevant to the defense. MHC should be given the opportunity at a new trial before a three-justice panel of the Justice of the Peace Court to demonstrate that its reasons for denying the applications were reasonable and would have resulted in "an undue hardship or burden" to MHC.[36]

---

[35] Second JP Order at 3. *See also* Initial JP Order at 2-3.
[36] *Vill. of Marshall, Wis.*, 787 F. Supp. at 878.

11

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is REVERSED, and the case is remanded to the Justice of the Peace Court for further proceedings consistent with this Order.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Chief Justice